[No. 1951.  Decided December 30, 1895.]

W. W. DEARBORN *et al.*, *Plaintiffs*, v. WASHINGTON SAVINGS BANK, *Defendant*; T. P. WATSON *et. al.*, *Respondents*, C. M. SHEAFE, *Receiver*, *Appellant*.

BANKS — DEPOSITS — SPECIAL OR GENERAL.

A deposit in a bank for which a duplicate general deposit slip is given on which is written "security for signing bond to be held by bank," against which the depositor subsequently draws a check payable to "certificate, of deposit," such as would be necessary to draw out funds on general deposit, for which he receives two certificates of deposit, one to be held by the surety aforesaid and the other to secure another set of bondsmen, the first of which was paid by the bank upon the depositor's indorsement, is not a special deposit which will be impressed with a trust in the hands of a receiver of the bank, although the depositor did not understand the effect of the papers received and signed by him.

Appeal from Superior Court, King County.— Hon. RICHARD OSBORN, Judge.   Reversed.

*Clise & King*, for appellant.

*Donworth & Howe*, for respondents.

The opinion of the court was delivered by

HOYT, C. J.—Substantially the only question of fact involved in the decision of this cause was as to the nature of a deposit made by the respondent T. P. Watson, in the Washington Savings Bank, of which the appellant is now the receiver.  The trial court found that this deposit was a special one and that the title to the money deposited never passed to the bank; that it held it in trust for said Watson for certain purposes.  If there is evidence to sustain this finding, certain important questions of law as to the tracing of trust funds must be decided.  If the evidence does not sustain such finding, and if, notwithstanding it,

it is here determined that the deposit was a general
one, so that the title to the money passed to the bank,
it will not be necessary to decide any of the disputed
questions of law, for the reason that it is conceded
that, if such was the nature of the deposit, the judg-
ment must be reversed and the petition denied.   It is
with reluctance that this court interferes with a find-
ing of fact by a trial court, but even in an action at law
such a finding will not be allowed to stand if the tes-
timony is overwhelming upon the other side, and in a
case of equitable cognizance like the one under con-
sideration such finding must be set aside if the pre-
ponderance of evidence is clearly against it.

It is not possible in this opinion to go at any length
into the proofs upon which we have come to a conclu-
sion as to the nature of this deposit.   We must be
satisfied with stating such conclusion and briefly re-
ferring to some of the evidence which has induced it.
Substantially the only testimony tending to show that
the money when deposited was received by the bank
as a special deposit was that of the respondent Wat-
son, and upon such testimony the finding of the
superior court must have been founded; for while it
is true that certain other statements and circumstances
were relied upon, they were none of them of such a
character that they could not have consistently existed
if the deposit had been a general one.   To meet
this proof there was little positive testimony.   The
president of the bank with whom the business was
transacted was unable to state the circumstances con-
nected with such deposit, and if there had not ap-
peared in the proofs certain papers which had been
delivered by the bank to said respondent and others
signed by him and delivered to it, his testimony would
not be so contradicted that it should not be given

force. These papers were, first, a duplicate deposit slip, such as it was the custom to use when a general deposit was made by a customer whose dealings with the bank were not expected to be numerous enough to justify his having a bank book. The fact that the deposit was entered by the bank upon this kind of a slip would in itself be very strong proof that it understood that it was a general deposit and that, in receiving it, it became the debtor of the depositor and not his trustee. This manner of treating the deposit on the part of the bank would not have bound the depositor had it not been made known to him. But when he received the duplicate slip he must be presumed to have known what the certifying of the deposit in that form would reasonably indicate.

That this would have been the result of the entering of the deposit upon such a slip and a delivery of a duplicate thereof to the depositor without anything excepting the fact of such deposit having been written thereon, is substantially conceded by the respondents; but it is contended that the writing upon said slip of the words "Security for signing bond to be held by bank," showed that the deposit was not to be treated as an ordinary general deposit. But to our mind these words written upon said slip should be given little or no force in determining whether by the deposit the bank became the debtor or the trustee of the depositor. The only thing that these words indicated was that whatever the relation between the depositor and the bank on account of the deposit, such relation had been assumed for the purpose of securing a surety upon a bond, and should be continued until such surety should be released from liability.

If there were nothing else in the case to affect the testimony of said respondent, it would none too well

warrant the finding of the trial court founded thereon. Public policy will not allow, upon any but satisfactory proof, one depositor to secure a preference over another by reason of the alleged fact that his money had been wrongfully used by the bank. But this testimony is not only further affected, but, in our opinion, entirely overcome by the fact that subsequent to the making of such deposit said respondent, desiring to change the security so that $700 of it would be available for one purpose and $800 for another, drew a check, payable to certificates of deposit, such as would be necessary to draw out funds on general deposit with the bank. This check was presented to the bank and marked paid, and a certificate of deposit for $800 made out, to be held by the surety, and another for $700 to secure another set of bondsmen. After this the first named certificate of deposit was surrendered to said respondent by the surety in the first bond, and upon indorsement by him paid by the bank. The money represented by the other certificate is that which is involved in this action. All of these papers were such as would have been required in the transaction of the business if the deposit was a general one and none of them would have been required had the deposit been a special one; and if they are to have their legal effect, they conclusively establish the fact that the deposit was general and not special.

The only way in which their force is sought to be met is by the general statement by said respondent that he did not understand their force and effect when he received or signed and delivered them; that all he supposed he was doing was in one instance getting a receipt for his money and in the other giving his own receipt therefor. But in the absence of any proof of fraud on the part of the bank in inducing him to re-

ceive or execute and deliver these papers, or of any testimony tending to prove that their contents or effect was in any manner misrepresented to him by any person, their force and effect was not overcome by such proof. In our opinion a clear preponderance of evidence was in support of the claim that the deposit was a general one. This being so, the money did not come to the hands of the receiver as a trust fund.

The judgment must be reversed and the cause remanded with instructions to deny the petition.   •

SCOTT and DUNBAR, JJ., concur.

GORDON, J., dissents.