(August 2, 1922.)

JOHN G. FRALICK, State Commissioner of Commerce and Industry, Respondent, v. COEUR D'ALENE BANK AND TRUST COMPANY, a Corporation, and F. W. REED and E. V. BOUGHTON, Individually and as Copartners Doing Business Under the Firm Name of REED & BOUGHTON, Appellants.

[208 Pac. 835.]

SETOFF — PARTNERSHIP CLAIMS AND OBLIGATIONS AS AGAINST INDIVIDUAL CLAIMS AND OBLIGATIONS—PARTNERSHIP SERVICES FOR INSOLVENT BANK—ATTORNEY'S LIEN ON JUDGMENT.

1. A partnership deposit in a bank cannot be set off by the partners individually against their individual debts to the bank, upon the insolvency of the bank.

2. Services rendered by a law firm to the special deputy of a state officer in charge of an insolvent bank at his request constituted a proper charge, as incidental expenses, payable out of the estate of such bank, under the orders of the court, and upon the value of such services being properly ascertained the amount allowed therefor may be applied upon the individual indebtedness of the members of the law firm to the bank or otherwise as they may direct. (C. S., secs. 5292–5294.)

3. Under the provisions of C. S., sec. 6576, a law firm is entitled to an attorney's lien on the proceeds of a judgment in foreclosure on behalf of a bank obtained by them before the insolvency of such bank, which lien is prior to the lien of depositors or other creditors of the bank, the proceeds of which may be applied as directed by them.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

Action to collect debts of insolvent bank. Judgment against makers of two promissory notes. *Reversed* in part and *remanded.*

John P. Gray, for Appellants.

Cases in which partnership claims have been set off: *Tucker v. Oxley,* 5 Cranch (U. S.), 34, 3 L. ed. 29; *Funk v. Young,* 138 Ark. 38, 210 S. W. 143, 5 A. L. R. 79; *St. Paul & Minneapolis Trust Co. v. Leck,* 57 Minn. 87, 47 Am. St. 576, 58 N. W. 826.

If it is necessary to effect a clear equity or to avoid irremediable injustice, a setoff will be allowed though the debts are not mutual. (*Cosgrove v. Cosby,* 86 Ind. 511; *Baker v. Kinsey,* 41 Ohio St. 403; *Fulkerson v. Davenport,* 70 Mo. 541; *Davis v. Industrial Mfg. Co.,* 114 N. C. 321, 19 S. E. 371, 23 L. R. A. 322; *Sheafe v. Hastie,* 16 Wash. 563, 48 Pac. 246.)

An attorney has a lien upon the cause of action from its beginning. (Sec. 6576, C. S.; *Taylor v. Taylor,* 33 Ida. 445, 196 Pac. 211.)

The trend of modern decisions is to protect the right of the attorney to receive compensation for his services. (*Kel-*

*logg v. Winchell,* 273 Fed. 745, 16 A. L. R. 1159; *Ingersoll v. Coram,* 211 U. S. 335, 29 Sup. Ct. 92, 53 L. ed. 208.)

Ezra R. Whitla, for Respondent.

The general rule of law is that a partnership indebtedness cannot be used against individual depositors and *vice versa.* (34 Cyc. 733, 734; 7 C. J. 745, par. 535; *Adams v. First National Bank,* 113 N. C. 332, 18 S. E. 513, 23 L. R. A. 111.)

Mutuality is essential to the validity of a setoff, and that, in order that one demand may be set off against another, both must mutually exist between the same parties. (*Harrison v. Harrison (Lamb v. Morris),* 118 Ind. 179, 20 N. E. 746, 4 L. R. A. 111; *International Bank of Chicago v. Jones,* 119 Ill. 407, 9 N. E. 885.)

Copartnership indebtedness or claims cannot be applied to individual indebtedness. (*Thomas v. Stetson,* 62 Iowa, 537, 49 Am. Rep. 148, 17 N. W. 751; *Eady v. Newton Coal & Lumber Co.,* 123 Ga. 557, 51 S. E. 661, 1 L. R. A., N. S., 650; *Witherington v. Huntsman,* 64 Ark. 551, 44 S. W. 74; 20 R. C. L., par. 162, p. 942; *Olson v. Lamb,* 56 Neb. 104, 71 Am. St. 670, 76 N. W. 433; 30 Cyc. 502.)

BUDGE, J.—From the record in this case it appears that prior to November 2, 1920, the Coeur d'Alene Bank and Trust Company, a corporation, was engaged in a general banking business at Coeur d'Alene, Idaho; that during the latter part of the year 1915 it employed E. V. Boughton, a member of the law firm of Reed and Boughton, to foreclose a chattel mortgage of $3,000; that proceedings in foreclosure were properly instituted, and thereafter a stipulation was entered into between the mortgagor and the bank, through said attorneys, whereby certain payments were to be made from time to time by the mortgagor to the bank, during which time and upon condition that the payments were so made, the proceedings were held in abeyance. On November 2, 1920, the bank became insolvent. The then Commissioner of Commerce and Industry, now

Commissioner of Finance, took possession of all the assets of the bank for the purpose of liquidation, and appointed Ezra R. Whitla as special deputy, who as such took over the affairs of the bank. Thereafter Mr. Whitla directed the firm of Reed and Boughton to proceed with the foreclosure of the chattel mortgage, in the course of which proceedings the mortgagor surrendered possession of the property, which was turned over to the special deputy.

It further appears that the president of the now insolvent bank employed the firm of Reed and Boughton from October 25, 1920, until November 2, 1920, in connection with matters which led up to the closing of the bank on the latter date. After the bank closed the special deputy continued the services of Reed and Boughton in connection with numerous matters with which they were peculiarly familiar by reason of their former connection with the bank, and in connection with these services Mr. Boughton expended the sum of $15 for personal expenses.

When the bank closed its doors E. V. Boughton owed the bank $500 on a promissory note, and F. W. Reed owed the bank $400 on a promissory note; making a total of $900 and interest due the bank from Mr. Boughton and Mr. Reed, individually, while upon proceedings subsequently had in the district court the firm of Reed and Boughton were allowed a claim against the bank of $100 for services in connection with the foreclosure of the chattel mortgage, $500 for services rendered to the bank both at the request of its president and the special deputy, $15 for expenses incurred, and $138.75 on account of a deposit in that amount to the credit of the firm when the bank closed, or a total of $753.75, which latter amount they seek to set off against their individual indebtedness.

It is stipulated that the depositors of the bank will not receive more than 70 per cent of the amount of their respective claims.

The questions submitted to this court for determination are by agreement of counsel designated as follows:

"1. Whether or not the firm of Reed and Boughton is entitled to have its deposits set off against individual notes of the members of said firm.

"2. Whether or not said firm is entitled to have its claim or any part thereof based upon services rendered and expenses incurred set off against the individual notes of the members of said firm.

"3. Whether said firm is entitled to a lien·for any part of the services rendered said bank, and particularly with reference to the claim for services in connection with foreclosure proceedings which were pending at the time of closing of said bank."

The court below held that the indebtedness due from the bank, including the deposit of $138.75 to the credit of the firm, could not be set off as against the individual indebtedness of each member of the firm, and based its conclusion upon the authority of the rule laid down in 7 C. J. 745, note 8, section 535, which reads as follows: "Where the debts are not due to and from the same person in the same capacity, the right of setoff does not exist."

We are of the opinion that the court was right in holding that the deposit which stood to the credit of the firm of Reed and Boughton could not be set off against the individual indebtedness of either Reed or Boughton by the special deputy. We think the rule to be as stated in the case of *In the Matter of Adam Van Allen, Receiver of the Bank of Albany,* 37 Barb. (N. Y.) 225, at 230, 231: "Where the debts are not due to and from the same persons in the same capacity, the right of setoff does not exist. Therefore, where, on the one side, the debt due to the bank is due from a firm . . . . , and the credit belongs to an individual, or *vice versa,* equity does not require or justify an application of the rule of setoff. It cannot be said, in any just sense, that these are mutual debts or credits, . . . . The rights of the receiver become fixed at the time of his appointment; the rights of creditors of the bank represented by him then attach; . . . . Parties must stand or fall by the

35 Idaho—48

condition of things in existence at the time of the appointment of the receiver, unless special equities exist.''

The question presented here seems to have been squarely passed upon in the case of *International Bank of Chicago v. Jones,* 119 Ill. 407, 9 N. E. 885, where the court said: ''The general rule is that a bank has a right of setoff, as against a deposit, only when the individual who is both depositor and debtor stands in both these characters alike, in precisely the same relation and on precisely the same footing towards the bank, and hence an individual deposit cannot be set off against a partnership debt.''

The converse rule is likewise true, that a partnership deposit cannot be set off against an individual debt. Neither in our opinion do the facts in this case fall within the exception to the effect that the rule that mutuality is essential to the validity of a setoff does not apply where it is necessary to allow a setoff to do complete equity or to prevent irremediable injustice. The firm of Reed and Boughton were depositors along with other depositors and will suffer no greater injustice in so far as their deposit is concerned than others like situated.

It will be observed that part of the services rendered by the firm of Reed and Boughton were rendered at the request of the special deputy, after the bank was closed. Under the law as it then existed, all services rendered the special deputy at his request would seem to constitute a proper charge, as incidental expenses, payable out of the estate of the bank, under the orders of the court, and when the value of such services is properly ascertained it may be applied upon the individual indebtedness of the members of the firm or otherwise, as they may direct. (C. S., secs. 5292–5294.)

Moreover, under the provisions of C. S., sec. 6576, the firm of Reed and Boughton is entitled to an attorney's lien on the proceeds of the judgment in the matter of the foreclosure of the chattel mortgage, which lien is prior to the lien of depositors or other creditors of the bank, and the amount to which they are entitled for such services may also

be applied as directed by the firm of Reed and Boughton.

This cause is remanded to the trial court, with instructions to ascertain the value of services rendered to the special deputy, and for further proceedings in accordance with the views herein expressed.   Costs are awarded to appellants.

McCarthy and Dunn, JJ., concur.