G. F. HANSBROUGH, Respondent, v. D. W. STANDROD & COMPANY, a Corporation, and E. W. PORTER, Commissioner of Finance of the State of Idaho, Appellants.

[249 Pac. 897.]

BANKS AND BANKING—INSOLVENT BANK—ATTORNEY AND CLIENT—ATTORNEY'S LIEN FOR SERVICES—ORDER OF PREFERENCE—APPLICATION OF STATUTORY PROVISIONS—CHOICE OF REMEDIES.

1. That through attorney's efforts bank acquired notes and stock, and promised to credit his fee on his note to it, was not sufficient to raise a trust, so as to make its debt to him one due by it as trustee, within Sess. Laws 1921, chap. 42, sec. 13, subd. 2, as to order of payment of debts of bank liquidated by commissioner.

2. Services by attorney to bank prior to its closing, not being expenses of liquidation, are not within Sess. Laws 1921, chap. 42, sec. 13, subd. 1, as to order of payment of debts of bank liquidated by commissioner.

3. Under statute, attorney has lien on property received by his client in settlement of action instituted by him for it.

4. . Attorney's lien can be discharged only by payment, express agreement backed by consideration, or laches, and so is not lost by client's unkept promise to pay fee already due by crediting attorney's note.

5. So long as no one is injured by delay, attorney is entitled to full period of limitations for asserting his lien without losing it by laches.

6. Attorney's lien on notes given to client and on stock, certificates of which were assigned to it as collateral therefor in settlement of action, while lost as to the notes, was not lost as to the stock by surrender with his consent of notes and certificates and issuance, in lieu thereof, of certificates for same stock direct to client.

7. Liens on any particular property of bank being liquidated by commissioner, recognized by Sess. Laws 1921, chap. 42, sec. 13, subd. 6, are to extent of proceeds of sale of lien property, to be paid without regard to declared preferences or priorities.

8. Under Sess. Laws 1921, chap. 42, sec. 11, as to liquidation of bank by commissioner, on rejection by commissioner of claim of one having lien, claimant could foreclose lien by suit against bank, or appeal directly from commissioner, and thereby have adjudicated every issue incident to foreclosure action.

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. Ralph W. Adair, Judge.

Action to enforce attorney's lien. Judgment for plaintiff. *Affirmed in part and reversed in part, and remanded with instructions.*

Roy L. Black, for Appellants.

Even where actual money is deposited or placed in a bank and afterward a claim is made that it was placed there in trust the proof must be exceptionally clear that the trust was actually created before declaring it a trust and permitting the creditor a preference right of payment. (*Fralick*

---

Publisher's Note.

4. See 2 R. C. L. 1068.
5. See 10 R. C. L. 396.

See Attorney and Client, 6 C. J., sec. 377, p. 775, n. 72; sec. 380, p. 776, n. 89; sec. 389, p. 776, n. 86; sec. 402, p. 790, n. 47, 50.

Banks and Banking, 7 C. J., sec. 541, p. 747, n. 41; sec. 545, p. 750, n. 64 New; sec. 548, p. 752, n. 88 New.

*v. Coeur d'Alene Bank & Trust Co.,* 36 Ida. 108, 210 Pac. 586; *Mutual Accident Assn. v. Jacobs,* 141 Ill. 261, 31 N. E. 414; *Wetherell v. O'Brien,* 140 Ill. 146, 33 Am. St. 221, 29 N. E. 904; *Woodhouse v. Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; *Kaesmeyer v. Smith,* 22 Ida. 1, 123 Pac. 943, 43 L. R. A., N. S., 100; *Dearborn v. Washington Sav. Bank,* 13 Wash. 345, 42 Pac. 1107; *State v. Dickerson,* 71 Kan. 769, 81 Pac. 497; *Lamro State Bank v. Farmers' State Bank,* 34 S. D. 417, 148 N. W. 851.)

Respondent had an attorney's lien on specific property or money which came into the hands of the commissioner of finance, and his lien must be enforced against the specific property he recovered by the suit, or if that property has been converted into cash he must show the particular proceeds of that property are in the hands of the commissioner of finance as a part of the assets of the said bank.

He cannot have an attorney's lien on the mass of the assets unless he shows that the assets contain the money which is the proceeds of the property or money recovered by him in the suit for which he claimed the attorney's lien for his fee. (C. S., sec. 6576; *Osborne v. Waters,* 92 Ark. 388, 123 S. W. 374; 2 Thornton on Attorneys-at-law, sec. 636; *Casey v. March,* 30 Tex. 180; 2 R. C. L., pp. 1069–1078; *Fralick v. Coeur d'Alene Bank & Trust Co.,* 35 Ida. 749, 27 A. L. R. 110, 208 Pac. 835; *Brown v. Erwin,* 89 W. Va. 113, 108 S. E. 605; Johnson on Liens, sec. 166; *Irvine v. Stevenson,* 183 Ky. 305, 209 S. W. 7; *Lyle v. Bach,* 93 S. W. 608; *Thompson v. Thompson,* 23 Ky. Law Rep. 1535, 65 S. W. 475; *Hatfield v. Richmond,* 177 Ky. 183, 197 S. W. 654.)

Thomas & Andersen and G. F. Hansbrough, for Respondent.

If a bank receives money or property which it agrees to credit on the note of the party from whom it is received, it is a trust fund and does not belong to the bank and is a preferred claim against all the assets of the bank. (*Peak v. Ellicott,* 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *Inde-*

*pendent Dist. of Boyer v. King,* 80 Iowa, 497, 45 N. W. 908; *Glennon v. Harris,* 149 Ala. 236, 13 Ann. Cas. 1163, 42 So. 1003, 9 L. R. A., N. S., 214; *Anderson v. Pacific Bank,* 112 Cal. 598, 53 Am. St. 228, 44 Pac. 1063, 32 L. R. A. 479.)

The right of the beneficiary of a trust to pursue a fund and impress on it the character of a trust is based on the principle that it is the beneficiary's property, and not upon any right of lien against the wrongdoer's general estate, whether the property sought to be recovered is in the form in which the beneficiary deposited it or is in a substituted form. (*Heidelbach v. Campbell,* 95 Wash. 661, 164 Pac. 247.)

Under C. S., sec. 6576, from the time of the commencement of an action an attorney has a lien on the cause of action and the proceeds thereof and may follow them into the hands of third parties. (*Taylor v. Taylor,* 33 Ida. 445, 196 Pac. 211; *State v. National Surety Co.,* 29 Ida. 670, 161 Pac. 1026, 2 A. L. R. 251; *Kerns v. Water Power Co.,* 24 Ida. 525, 135 Pac. 70; *Fralick v. Coeur d'Alene Bank,* 35 Ida. 749, 208 Pac. 835, 27 A. L. R. 110.)

An attorney's lien on his client's cause of action operates as security and if there is a settlement entered into between the parties in disregard of it, and to the prejudice of plaintiff's attorney by reason of the insolvency of his client or for other sufficient cause, the court will interfere and protect its officer by vacating the satisfaction of the judgment and permitting execution to issue for the enforcement of the judgment to the extent of the lien or by following the proceeds into the hands of third parties who received them before or after judgment impressed with the lien. (*Taylor v. St. Louis Transit Co.,* 198 Mo. 715, 97 S. W. 155; *Poole v. Blecha,* 131 N. Y. 200, 30 N. E. 53; *Bailey v. Murphy,* 136 N. Y. 50, 32 N. E. 627; *Lee v. Vacuum Oil Co.,* 126 N. Y. 579, 27 N. E. 1018; *Peri v. New York Cent. H. & R. R. Co.,* 152 N. Y. 521, 46 N. E. 849; *Miller v. Houston,* 27 Colo. App. 89, 146 Pac. 786.)

Under a statute like the Idaho statute the attorney bringing the suit has a lien on his client's cause of action which cannot be defeated by settlement of the parties. (*Hubbard v. Ellithorpe,* 135 Iowa, 259, 124 Am. St. 271, 112 N. W. 796; *Northrup v. Hayward,* 102 Minn. 307, 12 Ann. Cas. 341, 113 N. W. 701; *Deasman v. Butler Bros.,* 118 Minn. 198, Ann. Cas. 1913E, 642, 136 N. W. 747; *O'Connor v. St. Louis Transit Co.,* 198 Mo. 622, 8 Ann. Cas. 703, and note, 115 Am. St. 495; *Keeler v. Keeler,* 51 Hun, 505, 4 N. Y. Supp. 580.)

To constitute a waiver there must be some element of waiver, or intention to waive. A lien is not waived by acquiescence in the assignment of the judgment. (*In re King,* 168 N. Y. 53, 60 N. E. 1054; *Farmer v. Stillwater Co.,* 108 Minn. 41, 121 N. W. 418; *Hutchinson v. Worthington,* 7 App. D. C. 548; *Kinsey v. Stewart,* 14 Tex. 457.)

T. BAILEY LEE, District Judge.—On November 24, 1921, Swauger Brothers, a copartnership consisting of F. P., F. A. and O. H. Swauger, was indebted to D. W. Standrod & Co., a banking corporation, hereinafter for convenience termed the bank, in an aggregate sum of $52,000, besides interest, evidenced by their individual promissory notes secured by four chattel mortgages covering sheep and other personalty.

Being advised that John W. and Cecilia M. Swauger, father and mother of said copartners, had, as pretended and fraudulent mortgagees of said property, seized the whole thereof and advertised the same for sale, the bank directed respondent, G. F. Hansbrough, a practicing attorney, to institute an action enjoining such interference and to foreclose its then due mortgage.

Suit was promptly brought and full injunctive relief attained. However, before the case was tried, the bank, without its attorney's knowledge or consent, effected a satisfactory settlement with the debtors. Under the terms of the settlement, a corporation, Swauger Land & Live Stock Company, was organized with a capital stock of $250,000, shares being of the par value of one dollar each. To this corpora-

tion was transferred all the property originally mortgaged the bank as well as some additional property. One-third of the stock, in an amount of approximately $82,000, was issued to F. P., F. A. and O. H. Swauger, who took up the original notes, giving the bank in settlement their new notes totaling $67,555, and delivering the bank their stock as collateral. Having heard of the settlement respondent visited the bank, discussed the matter with its officers, particularly C. W. Berryman, president, and W. F. Berryman, cashier, and was by them assured that the settlement was satisfactory to all parties; that he would be taken care of and his fee credited upon his note formerly executed the bank, but then held by the Federal Reserve. The bank's complaint, verified by the vice-president, alleged that it had promised to pay respondent a reasonable attorney's fee, and that the sum of $4,500 was a reasonable fee for the foreclosure.

Thereafter, the new notes not having been paid when due, the bank employed respondent, together with the legal firm of Thomas & Andersen, to foreclose the collateral. After the cause was set for trial a settlement was effected by which the collateral was appraised along with all the property of the corporation, the collateral surrendered and a new certificate in lieu thereof and in an equal amount issued the bank direct, the debtors giving their new notes for the difference between the acknowledged indebtedness and the estimated value of the stock. Respondent was present at the settlement and consented to it.

Before fulfilling its promise to credit respondent's fee upon his note, the bank failed and was taken over by the commissioner of finance. Whereupon, respondent filed with the commissioner his claim and petition for the allowance of such fee in the sum of $4,500 as a preference under subdivision 2, sec. 13, c. 42, of Sess. L. 1921. Such preference was refused, but the full claim was allowed and classified under subdivision 4 of said section. Respondent appealed to the district court of Bingham county, claiming a preference under both subdivisions 1 and 2 of the section mentioned. The commissioner having duly filed his reasons for

his rejection and classification, the case was tried by the court without a jury.   Among other things the court found:

"III.   That by injunction and other legal proceedings in the above mentioned suit this claimant and appellant prevented the sale of said sheep and property and saved the property to said bank which became a part of the assets of said bank.   Said suit having been later amicably settled between the parties and the bank having received and added to its assets as a result of said suit property of value greater than $52,000.

"IV.   That for said services the said claimant and appellant charged and was to receive the sum of $4500, which said sum was agreed upon between claimant and said bank, and which was received by said bank, and held in trust for claimant and appellant.

"V.   That $4500 was and is a reasonable fee to be charged and allowed for such services as were rendered in said suit, no part of which has ever been paid.

"VI.   That said attorney's fee was included in the personal property received by said bank, the same being a part of the proceeds of said suit, all of which increased the assets of said bank.

"VII.   That the proceeds of said suit went into and became a part of the whole mass of the assets of said bank and the whole mass of the assets of said bank is impressed with a prior lien in favor of said claimant which is a preferred claim for the sum of $4500 with priority of payment under subdivision 2, section 13, chapter 42, Session Laws of Idaho for 1921."

From these findings the court concluded that respondent was entitled to a judgment in the sum of $4,500, the same to be a lien upon the entire massed assets of the bank, and carrying a preference under subdivision 2.   Judgment was accordingly entered declaring such lien and preference, and directing the commissioner to pay off the same out of the bank's moneys then in or thereafter to come into his hands.

From this judgment, both the bank and commissioner have appealed, attacking the above and other findings as errone-

ous, unsupported by the evidence, and charging that the court wholly erred in his conclusions.

[1]  Conceding that through respondent's efforts the bank acquired the notes and stock in question, and promised to credit his fee upon his note, this was not sufficient to raise a trust as contended. The legal title to the stock and notes was vested in the bank. No part of them had been placed in the bank subject to any agreement between the bank and respondent, or anyone in his behalf, and the record fails to show any agreement thereafter made setting aside any specific part thereof for him. The bank's promise to make a credit was a mere promise to pay a debt, and could not bind specific property. The finding that the fee was received by the bank, included in property received by the bank, and held in trust for respondent, is not established by any evidence in the record. To have established such an express trust, as so far contended, there must have been a specific agreement, charging specific property with a specific sum. In none of the conversations with the bank's officers was a specific fee ever agreed upon. It is true the bank agreed to pay a reasonable fee and declared in its complaint that $4,500 was a reasonable fee, but it must be remembered that such allegations were made in contemplation of a trial and subject to the court's ultimate determination of what, under all the circumstances, the fee should be. The finding that a reasonable fee was charged, to be received, and that $4,500 was a reasonable fee, is amply supported by the evidence. There is also sufficient evidence to uphold the finding that the notes and stock increased the bank's assets, but there is nothing to warrant the finding that such property was of the value of $52,000. No value, except par value, is anywhere mentioned. In the absence of anything to the contrary, the par value would be presumed to be the actual value. Here, it is admitted that stock of the par value of $82,000 was over two years later appraised at less than that par value. No presumption of a particular value can therefore be entertained. Nor can the finding and conclusion be sustained that the bank's assets are subjected to a prefer-

ence under subdivision 2, aforesaid, which is limited to "debts due by the bank as trustee or other fiduciary or claims of like character."

[2]   The court evidently rejected the claim of preference under subdivision 1, covering "expenses of liquidation, including compensation of agents, employees and attorneys." And, since respondent's services were rendered prior to the bank's closing, such rejection was correct.

An inspection of the pleadings shows only two declared issues, namely, those based by respondent on subdivisions 1 and 2. On both of these respondent must fail; and the case might well end here, did not both he and appellants recognize an issue of an attorney's lien *ipso facto* arising from the facts plead. [3]   The statute undoubtedly gave respondent an attorney's lien on the original notes and stock received by the bank in settlement of the first suit. (*Fralick v. Coeur d'Alene B. & T. Co.*, 35 Ida. 749, 208 Pac. 835.) Appellants contend that this lien was lost when respondent accepted the bank's promise to credit his note. As before observed, this was nothing but a promise to pay a debt already due, and the promise was never kept. [4]   The lien could have been discharged only by payment, express agreement backed by a consideration, or laches. There was neither payment nor agreement to discharge. [5]   It is urged that respondent's failure to assert his lien for more than two years constituted laches. But, so long as no one was being injured, he was entitled to the full period of limitations, which had not expired when he appealed from the commissioner's decision. Considering the amicable nature of his business and professional relations with the bank, the conclusion is well warranted that he refrained from bringing suit by reason of his confidence in the bank's intention to fulfill its promise.

[6]   Finally, it is argued that respondent lost his lien when he agreed to the surrender of the notes and stock subject thereto in the settlement of the second suit. As to the notes, the contention is well taken, and the same would be true as to the stock certificate, had other or different stock

been taken in lieu of that surrendered. But the new certificates merely operated as a direct transfer to the bank of the stock evidenced by the surrendered certificates. The hand may have appeared to be the hand of Esau, but the voice was the voice of Jacob; the form was changed, but the original substance remained.

[7] There is nothing in the record to show that this stock has been converted and its proceeds mingled with the bank's other assets. There is direct evidence that it was placed in the bank, and respondent testified that it was still there. Evidently he knew what he was talking about, as his testimony was neither contradicted nor questioned. His lien must be limited to the stock itself. And such lien is recognized by section 13, *supra,* which authorizes the commissioner, without regard to declared preferences or priorities to pay off any "lien, claims or charge against the bank's assets or property."

[8] Under section 11 of the act under consideration, respondent had two alternatives after the commissioner's adverse decision: He could have foreclosed his lien by suit against the bank, or as he did, appeal directly from the decision, and by such latter proceeding have adjudicated every issue incident to a foreclosure action. In either instance there might be a deficiency, for the satisfaction of which he would have to look to funds available under subdivision 4.

The judgment should be affirmed as to the award of the $4,500 fee, but reversed as to the declaration of a trust and the imposition of a lien upon the bank's massed assets, and the case remanded with instructions to enter judgment declaring an attorney's lien in respondent's favor upon the specific stock, ordering the same to be sold, and any deficiency to be satisfied by the commissioner out of funds subject to the provisions of subdivision 4, section 13 of the act, *supra.*

Wm. E. Lee, C. J., and Budge and Givens, JJ., concur.