CLINE *v.* UNION TRUST COMPANY.

[No. 14,938. Filed April 7, 1934. Rehearing denied June 28, 1934. Transfer denied October 3, 1934.]

*L. Darrow, Earl Rowley,* and *C. V. Shields,* for appellant.

*Roland Obenchain,* for appellee.

WOOD, C. J.—In order to indemnify one Arthur L. Hubbard as surety upon an appeal bond executed by the

appellant as principal, the appellant deposited with the appellee the sum of $40,000 and received as evidence thereof a receipt reading as follows:

"South Bend, Indiana, July 1, 1930.
RECEIVED FROM E. L. CLINE Ctf. of Deposit No. 25651, for $40,000.00 issued by the Indiana Trust Company of Indianapolis, Indiana, on the 9th day of June, 1930, in favor of E. L. Cline, to be accounted for by Union Trust Company according to the terms of a contract dated 7/1/30, executed by and between said E. L. Cline, Arthur L. Hubbard, and Union Trust Company.
UNION TRUST COMPANY,
By Arthur L. Hubbard, President."
$40,000.00

The contract referred to in said receipt executed contemporaneously therewith, and constituting a part thereof was in words and figures as follows:

"RECEIPT AND AGREEMENT

"WHEREAS, Ed L. Cline, of LaPorte, Indiana, is party defendant in certain litigation arising in LaPorte County, venued to St. Joseph Superior Court No. 1, entitled Roy R. Rodabaugh and Frank Madden v. Ed L. Cline; and

"WHEREAS, upon the trial of said cause heretofore had, judgment was entered against said Cline in the sum of $32,931.25; and

"WHEREAS, in order to perfect an appeal to the Appellate Court of the State of Indiana it is required that the said Cline file an appeal bond with acceptable surety thereon in the sum of Forty Thousand Dollars ($40,000.00); and

"WHEREAS, Arthur L. Hubbard, of South Bend, Indiana, is ready and willing to execute such bond in the penalty aforesaid as surety for the said Cline, provided that the said Hubbard is duly indemnified against liability thereon;

"NOW, THEREFORE, for the purpose of providing the said Hubbard such indemnity as against surety on said bond against all and any liability, loss, cost or expense thereon, and for the purpose of inducing the execution by him of said appeal bond, it is agreed as follows:

"(1)   The said Cline has this date deposited with the Union Trust Company of South Bend, Indiana, the sum of Forty Thousand Dollars ($40,000.00), the receipt whereof is hereby acknowledged, the same to be held by said Trust Company upon the following conditions:

"(a)   Said money is not to be segregated but is to go into the general funds of said Trust Company and one year from this date said Trust Company will pay the said Cline four per cent (4%) interest on said money and annually thereafter so long as said suit is pending on appeal to the said Appellate Court of the State of Indiana.

"(b)   Said Trust Company is to hold said $40,000.00 until the final disposition of said appeal by the said Appellate Court and until the certification back to the St. Joseph Superior Court No. 1 of said cause by said court or from any other court to which said cause may be transferred.

"(c)   In the event that judgment rendered by the St. Joseph Superior Court No. 1 is on appeal reversed and said reversal is certified back to the lower court, then in such case said Union Trust Company will repay to the said Cline said sum of $40,000.00.  If the judgment of said lower court is affirmed by said Appellate Court and the said Rodabaugh and Madden as judgment creditors in said cause shall release said judgment, principal and interest, and pay said court costs in full of record, then in such case said Trust Company will turn said sum of $40,000.00 over to the said Cline.

"(d)   If said judgment is affirmed on appeal, then upon the certification back to the lower court of such affirmance said Trust Company shall pay in to the Clerk of the St. Joseph Superior Court No. 1 for the purpose of satisfying said judgment principal, interest and costs, the said sum of $40,000.00, or so much thereof as may be necessary to fully satisfy said judgment, principal, interest and costs, and if there be an excess after the satisfaction of said judgment said Trust Company will turn the said excess over to the said Cline; or in the event that said Arthur L. Hubbard as surety on said bond shall pay said judgment then the said Trust Company shall pay to the said Arthur L. Hubbard the said sum of $40,000.00 or so much thereof as shall be necessary to fully reimburse the

said Hubbard and save him harmless of and from all liability, loss, costs or expense accruing against him on account of signing said bond.

"(e) In any such event said Trust Company shall retain as its fees therein the sum of Fifty Dollars ($50.00).

"(f) The said Trust Company agrees that it will not dispose of said sum in any other manner or times or for any other purpose than above specified, but will safely hold said sum as trustee (but with the right however to commingle said sum with its own funds) for the benefit of said Arthur L. Hubbard, E. L. Kline (Cline), or the said................ ......................judgment creditors in said judgment.

"(g) This receipt shall be nontransferable, nor shall the holder hereof have any right to require the payment to him of said sum except and upon the conditions above set forth.

"(h) In the event of the death of any individual mentioned herein this agreement shall inure to the benefit of his personal representatives.

"(i) This instrument is signed by Union Trust Company as the receiver of said money, by the said Ed L. Cline and Arthur L. Hubbard, as evidencing their concurrence in the provisions hereof, in triplicate, this 1 day of July, 1930.

UNION TRUST COMPANY,

By Arthur L. Hubbard,

Ed. L. Cline."

The appellant had a certificate of deposit for the sum of $40,000.00 payable to his order executed by the Indiana Trust Company of Indianapolis, this was properly endorsed and received by the Union Trust Company as cash, and by it credited to its general funds. In due course and through the usual channels this certificate of deposit was presented to and paid by the Indiana Trust Company. The funds resulting from the collection of said certificate of deposit passed into and were commingled with the general funds of appellee and were not segregated or set apart from its other funds. When the appellant endorsed the certificate of deposit on the Indiana Trust Company to the appellee, July 1, 1930,

appellee paid the interest then due on the certificate to appellant, the interest accruing thereon after that date was collected and retained by the appellee with knowledge and consent of appellant. April 18, 1931, Arthur L. Hubbard departed this life. His estate was insolvent. June 4, 1931, the appellee closed its doors. June 5, 1931, the Bank Commissioner took possession and control of appellee, and retained such possession and control until July 15, 1931, when appellee was placed in voluntary liquidation. June 5, 1931, appellee trust company was solvent, there was no substantial difference in the state of the books of appellee and its accounts between June 4 and July 16, 1931. At the time appellee closed its doors it was indebted to various estates, trusts, and other beneficiaries for which it had stood in the capacity of trustee, executor, administrator, or other fiduciary in the aggregate sum of $135,000.00 for trust funds which it had commingled with its own personal funds; this balance of $135,000.00 was much greater than the amount of cash and cash items which appellee had on hand in its vaults, and due from banks, bankers, or any source at the time it closed its doors.

July 1, 1930, the appellee had assets of loans and discounts, mortgage loans, land contracts, installment mortgage loans, cash on hand, bonds and securities, not including office fixtures, banking house and real estate amounting to the sum of $4,445,986.06, and on June 5, 1931, its assets of similar kind and character amounted to the sum of $4,854,060.86. October 1, 1931, the appellant filed a new appeal bond in substitution of the bond on which the said Hubbard was surety and Hubbard's estate was released from any further liability by virtue of said appeal bond. Appellant then made demand on appellee through proper channels for the return to him of the sum of $40,000.00, which demand was refused.

For the purpose of having the respective rights of the parties determined under the receipt, contract, and conduct in connection therewith, the appellant brought suit against the appellee under the "Uniform Declaratory Judgment Act," Acts 1927, p. 208, by a complaint in three paragraphs. As the record comes to us, it is not necessary to incorporate this complaint or its substance in this opinion. It is sufficient to say that the ultimate purpose sought, was the rendition of a judgment declaring appellant's deposit of $40,000 in appellee company to be a special deposit, entitling appellant to a preferential payment thereof, over the general depositors, out of the assets of the appellee company. Each paragraph of the complaint was answered by a general denial, and a second paragraph alleging facts in estoppel of appellant's right to recovery as prayed in his different paragraphs of complaint. Appellant filed a reply in denial to each second paragraph of answer. On the issues thus formed, the cause was tried by the court without a jury. At the request of the appellee the court found the facts specially and stated its conclusions of law thereon. The facts as found by the court were substantially as above set out.

On the facts as thus found, the court concluded the law to be, that the deposit made by the appellant, in the appellee company was a general deposit, and that in the payment thereof, the appellant was not entitled to a preference over other general depositors in appellee company. The appellant excepted to the court's conclusion of law. He also filed a motion for a new trial alleging as causes therefor, that the decision of the court was not sustained by sufficient evidence; that the decision of the court was contrary to law, and error of the court in striking out answers made by the appellant to certain questions propounded to him while testifying as a witness in his own behalf. Judgment was rendered

conforming to the conclusion of law. From this judgment appellant has appealed to this court. The only errors properly assigned and not waived are, that the court erred in its conclusion of law, and in overruling appellant's motion for a new trial.

Appellee contends that appellant has failed to comply with the rules of this court in the preparation of his brief, that, for that reason there is nothing presented for our consideration. This contention is without merit. Appellant's brief is prepared in substantial compliance with the rules of this court.

Appellee also insists that, inasmuch as under Acts of 1933, p. 176, the liquidation of its affairs, has been taken over by the Department of Financial Institutions of the State, which department has exclusive jurisdiction of such proceedings, the questions involved in this appeal have become moot. Appellee's position is not tenable. The judgment from which this appeal is taken, was rendered upon December 14, 1932. The above act was not passed by the legislature until the regular session thereof held in 1933. Those sections of the act upon which appellee relies as supporting his position did not take effect until July 1, 1933. Furthermore, section 366 of the act itself, contains a saving clause, which expressly exempts suits pending at the time of its passage from the effect thereof.

This brings us to a consideration of the case on its merits, as presented by the two alleged errors heretofore set out. The final disposition of this cause depends upon the answer to be made to the following questions, namely: (1) Was the deposit made by the appellant with the appellee company a special deposit, in trust, of such a character, that the appellant retained title to the fund? (2) If it was a special deposit in trust, and the appellant retained title in the fund, did he trace it

into the assets of the appellee company with sufficient certainty to entitle him to a preference in its payment?

The exceptions to the conclusions of law, admitted for the purpose of the exceptions only, that the facts upon which the conclusions were based had been fully and correctly found, limited however to the facts found within the issues formed by the pleadings. 2 Watson's Works Practice, sec. 1609, and authorities there cited. It is also the law sustained by a long and unbroken line of authorities, that the special finding of facts must contain all the facts necessary to entitle the party to a recovery, in whose favor the conclusions of law are found. On appeal all facts not embraced within the special finding will be deemed as not proven by the party having the burden of the issue, and the failure to find a fact essential to recovery will be regarded as a finding against the party having the burden of proving the same. Watson's Works Practice, sec. 1594. The truth of the facts contained in the special finding, may be questioned by a motion for a new trial, as was done in this case.

Construing the receipt issued by the appellee to appellant and the contract entered into by the appellant, appellee and Arthur L. Hubbard, as one contract and in their entirety, as we are required to do, [*Warrum* v. *White* (1908), 171 Ind. 574, 86 N. E. 959; 6 R. C. L., sec. 2227, p. 837], it is apparent that the appellee intended to and did make a general deposit of $40,000 in the appellee company for the purpose of establishing a credit which was to be paid by it out of its general funds to one of three persons, to wit: the clerk of the St. Joseph Superior Court No. 1., Arthur L. Hubbard, or appellee upon the happening of certain events, expressly enumerated in the contract.

A deposit in a bank is presumed to be a general deposit, in the absence of an agreement to the contrary,

by which the relation of debtor and creditor is created between the bank and the depositor, and the party who asserts that a deposit in a bank is a special deposit under circumstances where the relation of debtor and creditor does not arise has the burden of proof. This case as is usual in cases of this kind has its own characteristics. It is not a case where there has been a violation of the terms of an express or an implied trust, where a trustee has clandestinely breached the trust agreement to his own advantage and to the disadvantage of the *cestui que trust*. Here the facts disclose that the appellee did just exactly what the contract stipulated it could do, namely: accepted the deposit from appellant, did not keep it segregated, but placed it in and commingled it with general funds of appellee company, with an agreement that it would pay interest at the rate of four per cent per annum if left one year, and four per cent annually thereafter for the use of the money so long as the suit was pending on appeal in this court, and the money remained on deposit. When the appellant made the deposit under this contract he established the relation of debtor and creditor between the appellee and himself. That is to say, the title to the money passed from the appellant to the appellee, with the right to commingle it with its general funds and apply it to any use for which such funds were properly applicable in the regular and usual transaction of its business, appellant receiving in lieu thereof credit for the amount of the deposit to be exhausted only on the happening of certain events.

The fact that this deposit was made by the appellant for the benefit of himself and third parties, and was not to be paid to any one of them, until the happening of certain events, could not alter or change the relation of debtor or creditor which was created when the deposit was made. The appellee

company became the debtor of the parties, liable to pay the money to the one of them finally entitled thereto, not out of the $40,000.00 or substituted funds, but out of appellee's general funds.

Appellant contends that section (f) of paragraph 1 of the contract indicated that the parties thereto intended to and did establish a trust relation. This paragraph, when construed with the whole contract, is not susceptible of such an interpretation. It can mean only this, that there was deposited in and commingled with the general funds of appellee company, a sum of money which it agreed to pay to certain persons on the happening of certain designated events, that it could not pay the money out in any manner, other than as provided in the contract just as a trustee would do. To whom, when, and for what purpose the money should be paid was the only restriction placed upon the appellee. That it was not to hold this particular fund, or its equivalent, in a substituted form, in a special deposit, segregated from the balance of its general funds is beyond the realm of speculation, for paragraph (f) itself, provided that the appellee company should have "the right, however, to commingle said sum with its own funds," with a further provision in another paragraph of the contract to pay four per cent interest for the privilege of using the money in its general business as a bank, thus creating a condition which is antagonistic to the relation of trustee and *cestui que trust*. *Mutual Accident Ass'n.* v. *Jacobs* (1892), 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516; *Butcher* v. *Butler* (1908), 134 Mo. App. 61, 114 S. W. 564; *Fralick* v. *Coeur d'Alene Bank* (1922), 35 Idaho 749, 210 Pac. 586; *Marine Bank* v. *Fulton Bank* (1864), 69 U. S. (2 Wall.) 252, 17 L. Ed. 785; *Dearborn* v. *Washington, etc., Bank* (1895), 13 Wash. 345, 42 Pac. 1107.

Section (f) follows section (a) of paragraph one of

the contract. "It has been laid down as elementary law that if two clauses of a contract are so totally repugnant to each other that they can not stand together, the first shall be received and the latter rejected . . ." 6 R. C. L., sec. 236, p. 847. We hardly think it necessary to invoke this rule of law, but if these two paragraphs of the contract can not stand together then paragraph (f) must fall, and paragraph (a) must stand. We hold that the deposit made by the appellant in the appellee company was a general deposit, creating the relation of debtor and creditor between them, and that the court did not err in its conclusion of law. This conclusion makes it unnecessary for us to discuss the second question above suggested.

From an examination of the record it appears that the decision of the court is sustained by sufficient evidence and is not contrary to law.

In his motion for a new trial, appellant complained of certain rulings of the trial court on the exclusion of certain evidence. These alleged errors are waived by failure of appellant to discuss them in his brief.

Finding no error the judgment is affirmed.