Argued March 17, reversed and motion dismissed April 6, 1955

CRAWFORD *v.* CRANE ET UX., HUGHES

282 P. 2d 348

*Austin S. Hughes,* Portland, argued the cause and filed briefs for appellant.

No appearance by respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

WARNER, C.J.

This is an appeal from a summary judgment of the circuit court determining an amount due as attorney's fees and enforcing the lien which had been claimed therefor. It was heard without the benefit of a brief or oral argument in behalf of the respondent.

The appellant Guy F. Hughes, an attorney, instituted an action in May 1948 against the defendants Crane on their note in favor of Joe Crawford, the respondent. A judgment was obtained in June 1949

for the sum of $550, plus interest, and $75 allowed by the court at the time of trial as plaintiff's attorney's fee, and costs. Nothing was realized upon the account until sometime in July 1953, when the funds were paid into the court registry for satisfaction of the judgment and ultimate disbursement to the parties entitled thereto, including the appellant Hughes in satisfaction of the lien claimed for his fee.

■ Attorneys' liens for services are of two kinds. One is called a general, retaining or possessory lien; the other is a special, particular or charging lien. 7 CJS 1137, Attorney and Client, § 207; 5 Am Jur 387, Attorneys at Law, § 208.

■ The *retaining lien* of an attorney is one attaching to papers, documents, money, etc. of his client connected with the litigation in which he served the client and coming into his hands in the course of that employment and giving to the attorney the right to retain such papers, property or money until the attorney's charges against his client are paid. 7 CJS 1141, Attorney and Client, § 210; 5 Am Jur 388, Attorneys at Law, § 209.

■ A *charging lien* is the equitable right of an attorney to have his fees and charges for costs advanced for services in a particular suit, secured by the judgment or recovery in the suit or action in which the attorney's services were rendered. It is based upon equitable considerations and differs from ordinary liens in that possession is not essential. 7 CJS 1142, Attorney and Client, § 211; 5 Am Jur 392, Attorneys at Law, § 219. Also see *Mut. Life Ins. Co. v. Collier*, 161 Or 317, 322, 88 P2d 285; *Niedermeyer, Inc., v. Fehl*, 153 Or 656, 668, 57 P2d 1086. No formalities for giving notice of claim of a charging lien are provided by statute in this state.

Both retaining and charging liens existed at common law. *In re Sebring,* 264 NYS 379, 385, 238 App Div 281. Sections 67-1601, 47-516 and 47-517, OCLA, hereinafter referred to, stem from and have their counterparts in §§ 1012, 1024 and 1025, respectively, of "An Act to Provide a Code of Civil Procedure" of the General Statutes of Oregon (October 11, 1862). Section 67-1601, OCLA (now ORS 87.495) recognizes and authorizes the two types of attorneys' liens hereinabove referred to. At the time of the instant matter, the controlling and only statute under which an attorney could claim a lien was § 67-1601. So far as pertinent it reads:

"* * * An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section:

"(1) Upon all papers, personal property and money of his client in his possession for services rendered to such client, and may retain such papers until said lien, and claim based thereon, is satisfied, and may apply such money to the satisfaction of said lien and claim.

"(2) Upon action, suits and proceedings after the commencement thereof, and judgments, decrees, orders and awards entered therein in his client's favor and the proceeds thereof in whosesoever hands they may be or come, to the extent of the fees and compensation specially agreed upon which his client, if there be such agreement, and if not, for the reasonable value of his services, and such lien shall not be affected by any settlement between the parties to the action, suit or proceeding before or after judgment, decree, order or award. * * *"

It will be observed that subsection (1) of the foregoing statute embodies what the law knows as a "retaining lien", and subsection (2) recognizes and provides for a "charging lien". Appellant claims his lien under the "charging lien" portion of the statute and very properly, because he holds no "papers, personal

property and money of his client'' in his possession, nor, so far as revealed by any record here, was any claim made under § 47-516, OCLA, or otherwise, that the appellant Hughes held or refused to deliver any property belonging to Crawford.

In September 1953, Crawford moved the court, as an ancillary proceeding in the original action instituted by Hughes in behalf of Crawford, for an order directing disbursement of the funds held in the registry of the court, including the amount of $75 to Hughes in full payment for his attorney's fees and also for a small additional amount advanced by Hughes for costs. The court proceeded to dispose of the matter by a summary hearing, on the apparent assumption that this course of action was dictated by § 47-517, OCLA (now ORS 9.370). The hearing resulted in an order to pay Hughes $89.65 (which included $75 as attorney's fees). From that judgment Hughes brings this appeal.

The appellant Hughes contends (1) that the court was without jurisdiction to summarily adjudicate his lien claim under the provisions of § 47-517, OCLA, and thereby deprive him of the right to a plenary hearing on his claim; and (2) that he is entitled to recover his fees according to the terms of an alleged express oral agreement made between Hughes as attorney and Crawford as his client, under which Hughes contends he was to receive a contingent fee equaling 40 per cent of the amount recovered, plus any costs advanced by him.

Crawford denies the fee agreement claimed by Hughes and alleges that under the contract made, the attorney's reward for his services was to be only such amount as the court in the action against the Cranes should allow as a reasonable attorney's fee. As disclosed by the judgment, such fee amounted to $75.

Generally speaking, in the absence of statutory direction there is no well-settled method for the enforce-

ment of either a *retaining lien* or a *charging lien.* The methods for the enforcement of each kind are different and for each vary in different jurisdictions. 7 CJS 1100, 1200, Attorney and Client, §§ 194, 234; 5 Am Jur 392, Attorneys at Law, § 218.

No statutory method has been provided in this state for the enforcement of a *charging lien,* as such. The enforcement of a *retaining lien,* however, is in a different status. Coincident with the adoption of an attorney's lien (§ 67-1601, OCLA), the legislature, as we have noted, enacted what eventually became §§ 47-516 and 47-517, OCLA (now ORS 9.360 and 9.370), as a part of the same act which brought § 67-1601 into being.

Sections 47-516 and 47-517, OCLA, are, as suggested by counsel, *para materia* and must be construed together. Section 47-516 provides:

"* * * When an attorney refuses to deliver over money or papers to a person from or for whom he has received them in the course of professional employment, whether in a judicial proceeding or not, he may be required by an order of the court in which a judicial proceeding was prosecuted or defended, or if none were prosecuted or defended, then by an order of the circuit court or judge thereof for the county where such attorney resides or may be found, to do so within a specified time, or show cause why he should not be punished for a contempt. * * *"

Section 47-517, following, reads:

"* * * If, however, the attorney claim a lien upon the money or papers, under the provisions of section 67-1601, the court shall:

"(1) Impose, as a condition of making the order, that the client give security, in form and amount to be directed, to satisfy the lien when determined in an action or suit; or,

"(2) Summarily inquire into the facts on which the claim of a lien is founded, and determine the same; or,

"(3) Direct the trial of the controversy by a jury, or refer it, and upon the verdict or report, determine the same as in other cases. * * *"

We note that orders issued under § 47-516 are addressed to "*an attorney*" who refuses "to deliver over money or papers to a person from or for whom he has received them in the course of professional employment". No show cause order was issued, under this section, for service on Hughes.

■ The language of § 47-517 which brings it into a dependent and coordinate relationship with the section preceding it is, "If, however, *the attorney* claim a lien upon the money or papers * * * the court shall" follow any one of the alternative procedures provided by that section. (Italics ours.) Obviously, "the attorney" referred to in § 47-517 is "an attorney" served with a show cause order under the companion statute, § 47-516. Any other construction of § 47-517, standing alone, would destroy its intended vitality and would render § 47-516 purposeless unless some future action were to follow upon the filing of the return made to the order issued under § 47-516. The provisions of these two sections provide the only statutory method for securing judicial attention and subsequent enforcement of a *retention lien* claimed under § 67-1601, OCLA. However, they do not supply a remedy or method for the enforcement of an attorney's *charging lien,* the character of the Hughes lien.

■ Four things must concur and be shown by the return made to the show cause order issued pursuant to § 47-516 before recourse can be had to any of the procedures established by § 47-517. They are (1) that the party holding the property of another is an attorney;

(2) that the property held belongs to a client; (3) that it has been received by the attorney in the course of professional employment by the client; and (4) that the attorney claims a retention lien thereon under § 67-1601, authorized by subsection (1) of that statute. Then, and not until then, can § 47-517 be invoked by one seeking to discharge or enforce the claimed retention lien. However, in the instant matter the court made no order under § 47-516, and for that reason there was no return before the court justifying the action it took under § 47-517. It acted solely in response to Crawford's motion.

We do not here undertake to say what methods are available to appellant for the enforcement of his charging lien, nor do the exigencies of this appeal demand that we do so. The kinds of relief that might be available, as we have earlier indicated, are not settled but are various and are apparently, in the absence of statutory direction, controlled by peculiar circumstances attending the character of the lien asserted, that is, for example, whether the amount claimed is fixed and determined, unliquidated or contingent, or whether the claim rests upon asserted reasonable value in the absence of an express agreement for compensation. See 5 Am Jur 407-410, Attorneys at Law, §§ 242 et seq., regarding enforcement of a charging lien.

When, as here, conflicting issues exist as to the character of the attorney-client contract subsisting between the parties and the amount due the attorney for his services, it might well appear that a suit in equity would be in order, thus giving the lienor and the lienee the benefit of a plenary hearing upon the issues between them but now denied by the summary processes provided by § 47-517, OCLA. 5 Am Jur 408, Attorneys at Law, § 244.

Since we hold that the lower court was without power to dispose of appellant's *charging lien* in the manner it did, it is unnecessary for us to consider the court's further finding with reference to the amount due for services rendered by Mr. Hughes.

The order of the court will be reversed and the motion of Crawford dismissed without prejudice to such action as either party deems appropriate in the premises.