232 F.2d 77
 UNITED STATES of America and Lee Arenas, Appellants,
v.
John W. PRESTON, Oliver O. Clark, and David D. Sallee, Appellees.
Lee ARENAS, Appellant,
v.
John W. PRESTON, Oliver O. Clark, and David D. Sallee, Appellees.
 No. 14555.
 United States Court of Appeals Ninth Circuit.
 February 23, 1956.
 Rehearing Denied May 21, 1956.
 
 Perry W. Morton, Asst. Atty. Gen., John F. Cotter, Edmund B. Clark, Roger P. Marquis and John C. Harrington, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for appellant United States.
 Irl Davis Brett, Los Angeles, Cal., for appellant Lee Arenas.
 John W. Preston, Los Angeles, Cal., Oliver O. Clark, La Canada, Cal., David D. Sallee, Santa Monica, Cal., for appellees.
 Before STEPHENS and CHAMBERS, Circuit Judges, and TAYLOR, District Judge.
 STEPHENS, Circuit Judge.
 
 
 1
 The United States in its appeal accurately states the two ultimate issues in the following language:
 
 
 2
 "1. Whether interest on attorneys' fees may be imposed against a fund in court which represents restricted Indian land.
 
 
 3
 "2. Whether an attorney's lien on the proceeds of land recovered through his efforts in one suit includes expenses incurred in another suit."
 
 
 4
 In addition to the issues mentioned, there is a question as to the effectiveness of the appeal.
 
 
 5
 In Arenas v. Preston, 9 Cir., 1950, 181 F.2d 62, this court, upon appeal, approved the impressment of a lien on the Indian's allotment of land for the attorney fees and cash advanced for costs by attorneys for the Indian. However, we remanded the case to the district court with instruction to ascertain and fix the reasonable sum for attorney fees instead of fixing the fees upon a contract which had been entered into between Lee Arenas and the attorneys. The district court complied with the conditions of the remand in a judgment and supplemental decree entered April 6, 1951. The district court's decree was silent as to the interest on the sums so fixed. The decree did, however, provide:
 
 
 6
 "Fourth. That the plaintiff, Lee Arenas, be and he is hereby allowed a period of six (6) months from and after the date of the entry of the judgment and supplemental decree herein within which to pay the compensation and expenses of suit awarded to the petitioners, * * *."
 
 
 7
 It then provided in the next paragraph for the public sale of the lands and for the payment out of the proceeds of the sums referred to, together with expenses, and payment of the balance to the United States in trust for the plaintiff.[1] In the next paragraph of the decree the court provided for its own retention of jurisdiction to confirm any sale of the lands, distribute funds received from the sale, and generally —
 
 
 8
 "* * * in order to fully effectuate and enforce the judgment and supplemental decree herein in accordance with the equitable jurisdiction, practice and procedure of this [district] court."
 
 
 9
 No payment was made upon the judgment within the six-month period, but many months thereafter the attorneys filed a petition with the district court requesting a sale of the property under the judgment which petition was granted and the order provided that a commissioner should sell sufficient lands to pay expenses of the sale, the attorney fees and costs, and for the first time in the litigation, the interest thereon was mentioned as follows:
 
 
 10
 "* * * together with lawful interest thereon at the rate of 7% per annum from April 6, 1951, [the date of entry of the supplemental decree] * * *."
 
 
 11
 The sale was to be made not earlier than October 24, 1953. This order of sale or judgment was made August 6, 1953, and entered August 10, 1953.
 
 
 12
 Thereafter, the United States made a motion to the district court to delete from the order of sale or judgment, the inclusion of interest on the unpaid sums, upon the ground that:
 
 
 13
 "* * * the judgment herein as entered [the April 6, 1951, judgment] does not require the payment of interest, and interest is not recoverable herein in any event."
 
 
 14
 The court denied the motion as made, but ordered the supplemental decree to be modified so as to require interest to run from October 6, 1951, the end of the six-month period in which the fees were payable, without resort to sale of the land. The last referred to order (modifying the order of sale) was made October 26, 1953, and entered November 10, 1953. No appeal was ever taken from this order.
 
 
 15
 Subsequently, and before public sale of the property, private sale of certain portions of the property was made, and by stipulation and court order the cash proceeds were deposited in the registry of the court, subject to the same lien as was impressed on the land.
 
 
 16
 Appellee Preston petitioned the district court for an order of payment, out of the money in the court's registry, of the interest and costs involved (together with advances made in another action which will be later clarified) and, after the issuance of a show-cause order, a hearing, and the findings of fact and conclusions of law, the court approved by its judgment dated August 21, 1954, and entered August 23, 1954. It is from this latter judgment that the instant appeal by the United States and Lee Arenas is taken as to the items of interest and the advances in the other action.
 
 
 17
 It is the contention of the appellee that the basis of the ruling, on the inclusion of the interest and costs in the judgment, is the order of sale made October 26, 1953, and entered November 10, 1953, from which no appeal was ever taken, and that the inclusion of interest and costs became res judicata thereby.
 
 
 18
 To this contention little defense is made but appellant United States says in its brief (and Arenas advances the same idea):
 
 
 19
 "Since the suit involved restricted Indian land it was a suit against the United States and the court's power was limited to the extent of the consent of Congress. Congress had not permitted the imposition of interest. Therefore the order or judgment attempting to charge interest against the fund was more than erroneous — it was void. United States v. United States Fidelity [& Guaranty] Co., 1940, 309 U.S. 506, 514 [60 S.Ct. 653, 84 L.Ed. 894]; United States v. New York [Importing] Rayon Co., 1947, 329 U.S. 654, 658-663 [67 S.Ct. 601, 91 L.Ed. 577]; United States v. Shaw, 1940, 309 U.S. 495 [60 S.Ct. 659, 84 L.Ed. 888]; Tillson v. United States, 1879, 100 U.S. 43 [25 L.Ed. 543]; Carr v. United States, 1878, 98 U.S. 433 [25 L.Ed. 209]. Consequently, whether or not appealed from, the order of November 10, 1953, was without effect."
 
 
 20
 Unquestionably, the suit is, in nature, against the United States. In the case of United States v. New York Rayon Importing Co., 1947, 329 U.S. 654, 658, 67 S.Ct. 601, 603, 91 L.Ed. 577, the United States Supreme Court (after referring to § 177(a) of the Judicial Code wherein the awarding of interest is specifically proscribed in suits before the Court of Claims unless upon a contract expressly stipulating for the payment of interest) says:
 
 
 21
 "* * * [T]his provision codifies the traditional rule regarding the immunity of the United States from liability from interest on unpaid accounts or claims. In other words, in the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress. * * * The consent necessary to waive the traditional immunity must be express, and it must be strictly construed. Tillson v. United States, 100 U.S. 43, 25 L.Ed. 543; United States v. Thayer-West Point Hotel Co., supra [329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521]."
 
 
 22
 The principle is applied in Anglin & Stevenson v. United States, 10 Cir., 1947, 160 F.2d 670, a case strikingly similar to the instant case. See Huntley v. Southern Oregon Sales, 9 Cir., 1939, 104 F.2d 153.
 
 
 23
 And it was said in United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894:
 
 
 24
 "Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review [as in our case by not appealing from the order of November 10, 1953] cannot give force to this exercise of judicial power."
 
 
 25
 Appellee, however, argues that the sale of certain of the lands and the payment of the proceeds into the court's registry worked a redemption of the lands from the lien. But the sale and the payment into court occurred under agreement of all parties with and under the stipulation that the money would be under the same restrictions as the land.
 
 
 26
 If, as it seems to us we must do, we hold that the failure to appeal from the November 10, 1953, order modifying the "Order for Sale of Real Property to Satisfy Supplemental Judgment and Decree" which was in essence a modifying order of the supplemental judgment, it leaves the matter of interest on the allowed attorney fees beyond attack as res judicata if the court had jurisdiction to allow the interest. If the court was without jurisdiction, its action was void as to the allowed interest, and we have just held it to be; therefore, the order was of no effect and it did not and could not be held as res judicata upon the item of interest.
 
 
 27
 It follows, therefore, that when in compliance with appellee's petition for distribution of the accumulated interest, the court ordered interest paid out of the trust fund in the court's registry, nothing stood in the way of an appeal by the United States and Arenas upon the ground that the order was void.
 
 
 28
 We hold that the appeal from the order directing the distribution of interest upon the sum fixed as attorney fees was proper and that the order in that particular was and is void.
 
 
 29
 In the long litigation concerning the right and extent of the right to allotment of lands to Lee Arenas, an action was brought by him in which Eleuteria Brown Arenas and the United States were defendants. Eleuteria was an adopted daughter, under tribal custom, of Lee and Guadaloupe Arenas, Lee's wife. In the prosecution of this suit, appellee Preston at the request of Lee Arenas advanced the sum of $468.19 as expenses in the suit and the court ordered this sum paid to appellee Preston out of the funds on deposit in the court's registry. There can be no question as to the right of appeal on this item, since it is not mentioned in the original judgment or in the supplemental judgment or in the amendment to the supplemental judgment, and it appears for the first time in the court's order entered August 23, 1954, and the appeals of the United States and Arenas were timely.
 
 
 30
 The record shows no detail as to why the advanced monies in the Eleuteria case were ordered distributed out of the trust funds in the court's registry. The briefs of the parties are but sketchy and do not agree with each other. If the Eleuteria case was as appellee's brief states it, that it was:
 
 
 31
 "* * * in reality, a part of the allotment proceeding and was integrated therewith,"
 
 
 32
 and we note that the trial judge so regarded it, and that the expenditure was a necessary and proper one,
 
 
 33
 "to make fully effective the judgment awarding the allotment of Guadaloupe Arenas to Lee Arenas * * *,"
 
 
 34
 as appellee claims it to be, we think the court was within its equitable powers in ordering it paid out of the trust funds. All intendments are presumed in favor of a judgment upon subject matter within the jurisdiction of the trial court. There is nothing before us upon which we can hold that the court committed clear error as to this item or that the order in this particular is void.
 
 
 35
 The court's order appealed from is reversed and set aside as to interest on the attorney fees, and affirmed as to the payment of $468.19 from the court's registry for advances made in the Eleuteria Brown Arenas suit.
 
 
 36
 Reversed in part. Affirmed in part.
 
 
 
 Notes:
 
 
 [1]
 We said in the cited case, Arenas v. Preston, 9 Cir., 1950, 181 F.2d 62, at page 67: "The interest of the United States in the allotment will not cease to exist until the `trust patent' to the property is ripened into an unqualified patent to it and the impressment of a lien for an excessive fee would illegally and inequitably affect such interest."