625 P.2d 1072

Floyd E. SKELTON and Idaho Livestock Commission Company, an Idaho corporation, Plaintiffs,

v.

Louise SPENCER and Miriam Spencer, Defendants-Appellants,

Leland Spencer, Carmen Spencer Jensen, Alexa Spencer Elkington, and Janet Spencer, and Idaho First National Bank, Executor of the Estate of S. R. Spencer, Deceased, Defendants,

Rigby, Thatcher & Andrus, P. A., Claimants-Respondents.

No. 12969.

Supreme Court of Idaho.

Feb. 10, 1981.

Rehearing Denied April 20, 1981.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendants-appellants.

Gordon S. Thatcher and G. Rich Andrus of Rigby, Thatcher & Andrus, P. A., Rexburg, for claimants-respondents.

McFADDEN, Justice.

This appeal involves the attempted assertion and enforcement of an attorney's charging lien. Holding that the assertion of the claims involved here in the manner selected was proper, we affirm.

The appellant's husband, S. R. Spencer, died in 1960. At that time, he was one of the partners in the Skelton-Spencer Trading Company, a partnership which held all the capital stock of the Idaho Livestock Auction Company, an Idaho corporation. The Trading Company was involved in the purchase and sale of livestock. The Auction Company was engaged in an auction sale business on real property owned by and leased from the Idaho Livestock Commission Company. Spencer in his lifetime owned 24½% (127½ shares) of the stock of the Commission Company.

Upon Spencer's death, the Idaho First National Bank was appointed executor pursuant to his will. The bank then sold Spencer's partnership interest in the Trading Company (and thus the Auction Company) to the surviving partners, M. R. Skelton and Floyd Skelton. The probate court (case no. 4193, Seventh District Magistrate Division, Bonneville County) confirmed the sale. The appellant, Mrs. Spencer, initiated an action (no. 13674, Seventh District, Bonneville County) against the bank and the Skeltons in 1964 alleging her husband's interest in the Trading/Auction Companies had been sold at an undervalued figure. The district court dismissed that action for failure to obtain jurisdiction over an indispensable party, a ruling this court reversed, remanding the case for further proceedings. *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967).

Thereafter, in 1970, Mrs. Spencer discharged her attorneys and approached the firm of Rigby & Thatcher (now Rigby, Thatcher & Andrus) with a request for representation in a number of related legal areas. She had many concerns which included not only the above mentioned sale, but also the performance of the executor of her deceased husband's estate, the validity of certain disclaimers entered into by her children, the extent of the partnership and corporate interests held by her husband and the efforts necessary to realize upon them, and other matters.

Rigby & Thatcher agreed to take on the myriad legal concerns of Mrs. Spencer in regard to the estate. An agreement was later made through correspondence which set the parameters of the representation. Mr. Thatcher wrote on March 6, 1973:

"Dear Louise:

To avoid any misunderstanding, I believe we should have an agreement as to our compensation in these various matters:

1. Removal of Executor and Approval of Disclaimer of Heirs. $7,500.00 and if an appeal is taken to the Supreme Court an additional $2500.00. This is regardless of outcome.

2. Pending law suit against Idaho First National Bank, et al. $5,000.00 if resolved at trial stage and an additional $2500.00 if involving an appeal to the Supreme Court, regardless of outcome. Plus an additional fee, contingent on outcome, of 15% of all sums recovered.

3. Potential suit against Idaho Livestock Commission Company. If settled without suit (such as a package settlement of all claims) then 15% of all sums recovered. If a suit is required, then $5,000.00 if resolved at trial stage and an additional $2500.00 if involving an appeal to the Supreme Court, regardless of outcome, plus an additional fee contingent on recovery, of 15% of all sums recovered.

Please write me of your acceptance of this arrangement. If there are any questions on it please call or write.

All of this will be plus actual costs disbursed.

This has already required a tremendous expense and effort on our part with much more required in the future.

It appears you will want a court determination on all of these matters.

Sincerely,

/s/ G. S. Thatcher"

Three days later Mrs. Spencer replied that "the proposed fees are entirely reasonable and acceptable to me." This agreed upon representation clearly contemplated the recovery of a sizable sum for Mrs. Spencer from the related endeavors, and provided for the payment of compensation to the firm depending upon the contingencies encountered in achieving this recovery.

As noted in the letter, Rigby & Thatcher were to institute proceedings for the removal of the bank as executor of the estate and to secure approval of the previously filed disclaimers of the Spencer children. Prior to the sending of the March 6 letter, Rigby & Thatcher had so petitioned the probate court in case no. 4193. These matters were awaiting decision when the present litigation concerning the attorney's lien arose.

The firm was also requested to proceed with the pending action, no. 13674, concerning the allegedly undervalued sale of the partnership interest. After remand by this court, *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967), no action was taken for some time. The case was ultimately set for trial on May 1, 1973.

The other action contemplated was a potential suit against the Commission Company in the nature of a shareholder's action to obtain a recovery for Mrs. Spencer for rents owed to the Commission Company by the Auction Company and for allegedly unpaid dividends on the stock owned by her husband. It was apparently understood that Rigby & Thatcher would try to compel the bank to seek this recovery before actually filing their own suit; an alternative prayer for relief in the petition for the removal of the bank as executor in case no. 4193 so requested.

The claims of the plaintiffs (Mrs. Spencer and the children) in no. 13674 were settled on May 2, 1973 as to all parties save the bank, against whom the right of further action was reserved. This settlement also resolved the rent and dividend claims against the Commission Company noted above.

Two agreements were entered into in regard to this settlement. Mrs. Spencer entered into a covenant not to sue the Commission Company in consideration of $150,000 with $25,000 being paid upon execution and the remainder due upon Mrs. Spencer obtaining the ratification of the children. Mrs. Spencer relinquished her Commission Company stock by way of this agreement. She also signed a covenant not to proceed further and not to execute in case no. 13674, releasing those claims (save any against the bank) for $37,500. $5,000.00 of this amount was immediately paid. Thus a total of $187,500 was paid or obligated in settlement of Mrs. Spencer's various claims concerning the estate of her husband.

Subsequently, in July 1973, Mrs. Spencer became dissatisfied with her legal representation and discharged Rigby & Thatcher as her attorneys. She concomitantly refused to perform the settlement agreements. The other parties to the agreements (Skelton and the Commission Company) then commenced an action (no. 20500, Seventh District, Bonneville County) against Mrs. Spencer, her children, and the bank as executor seeking specific performance. This action also desired to determine all claims of the defendants against the settlement amounts.

During the course of this litigation, Rigby & Thatcher filed notice of claim of attorney's lien in case no. 20500, case no. 13674, and the probate case no. 4193. Following a trial to the court in case no. 20500, judgment was rendered granting specific performance of the settlement agreements. Mrs. Spencer appealed to this court and in *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977), *cert. den.* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978), that decision of the district court was affirmed. The plaintiffs in case no. 20500 then deposited with the district court the remaining unpaid balance ($157,500) due under the settlement agreements.

Rigby & Thatcher thereafter filed a petition in no. 20500 to enforce the lien against the fund. They sought an order directing payment of claimed fees and an order to show cause directing Mrs. Spencer to appear and show why the claimed lien should not be enforced. The court issued an order directing the clerk to pay the attorneys but allowing Mrs. Spencer a time in which to respond.

Mrs. Spencer, now represented by other counsel, answered by way of a motion to strike the order and an affidavit of Mrs. Spencer in opposition to the lien and claimed fees. She also raised objections to venue and asserted a right to a jury trial on the question of the lien. Argument was had and the court denied the motion to strike. Mrs. Spencer's attorney then filed a "response" to the claimed lien in which improper venue and the right to a jury trial were again asserted, and dismissal of the claim sought. Mrs. Spencer also alleged that any such lien claim must be brought in an independent law suit. The matter of the asserted lien was set for hearing on the pending order to show cause in October of

1977, but was continued to December 14, 1977, upon the stipulation of the parties. Subsequent to the hearing, at which all parties were heard on the merits of the lien issue as well as the raised objections, the district court entered an order on March 24, 1978, granting attorney fees. The court noted that Mrs. Spencer had appeared and contested the relief sought by the attorneys, reasserting those contentions mentioned above. The court found that Mrs. Spencer and Gordon Thatcher entered into an agreement whereby the firm was to be paid a fee of $5,000 plus 15% of all sums recovered; that the litigation was settled through the agreements under which $187,500 was to be paid; that the intent of the parties was that the 15% contingency was meant to apply to all sums recovered;[1] and that the attorneys were entitled to the fee as set forth, i. e., $5,000 plus 15% of $187,500.

Thereafter, on March 27, 1978, the district court entered judgment for the fees, noting that the order of March 24 contained findings of fact and that the judgment supplemented those findings. In this document, the court noted that under the fee agreement the attorneys were also to receive $7500 for their services in regard to the removal of the executor in the probate matter no. 4193. Stating that the attorneys' work in this matter was substantially completed though no court decision had been reached prior to the settlement, the court found that the sum of $5,450 previously paid to Rigby & Thatcher by Mrs. Spencer adequately compensated them in this regard. The court also recognized that Rigby & Thatcher held $8,866.17 in trust for Mrs. Spencer, and allowed this sum to be applied against the owed fees. Therefore judgment was entered in the amount of

---

1. The court stated in this regard that the contingency was meant to apply to all sums recovered and not just those above a previously offered "sales price". This comment refers to the argument of appellant at trial and here that part of the sum involved in the settlement of claims represented the purchase price of appellant's stock in the Commission Company and was not to be considered part of the "sums recovered." The language in section "3" of Thatcher's letter stands opposed to this argument. And the trial court, clearly in the best position to analyze this question, ruled that the parties' intent was that *all* sums recovered be subject to the contingent fee agreement. This conclusion is not clearly erroneous, is supported by the evidence, and will stand on appeal. *Higgenson v. Westergard*, 100 Idaho 687, 689, 604 P.2d 51, 53 (1979).

$33,125.00 of which the sum $24,258.83 remained to be paid after application of the $8,866.17 trust amount. The clerk of the court was directed to pay over that amount from the funds on deposit with the court. This appeal followed from the order of March 24 and the judgment of March 27.[2]

■ At the outset, we find that the attorneys could seek to enforce their lien by petition in case no. 20500 as opposed to maintaining an independent action. Speiser in his treatise, Attorneys' Fees (1973), makes the following statement.

> "It has been held that an attorney's lien on property recovered may, upon application to the court, be enforced in the original action in which the services were rendered. An approved procedure, where a charging lien has attached to a judgment or where money has been paid into court, is for the attorney to file an intervening petition and have the amount and extent of his lien judicially determined. There is no right to a jury trial in the proceeding." Speiser, § 16.36, pp. 399–400.

See also, 7 Am.Jur.2d § 345 (1980).

At least three Idaho cases have impliedly recognized the ability of an attorney to assert and enforce a charging lien in the action in which it arose. See *Updegraff v. Adams*, 66 Idaho 795, 169 P.2d 501 (1946); *Renfro v. Nixon*, 55 Idaho 532, 45 P.2d 595 (1935); *Taylor v. Taylor*, 33 Idaho 445, 196 P. 211 (1921). Other jurisdictions have come to the same conclusion in more express terms. For example in *Gee v. Crabtree*, 192 Colo. 550, 560 P.2d 835 (1977), the Colorado Supreme Court was faced with an appellate court decision holding that the exclusive method of enforcing a charging lien was by way of an independent civil action. That analysis was overturned, the Supreme Court reasoning that while an independent action was certainly a proper means of enforcement, it manifestly was not the sole means. The court stated:

"To restrict the means of enforcement of an attorney's lien *solely* to independent civil actions would be a waste of judicial time, as well as contrary to the legislative intent reflected by the statutory language. The trial judge who heard the proceedings which gave rise to the lien is in a position to determine whether the amount asserted as a lien is proper and can determine the means for the enforcement of the lien .... In our view, the attorney's charging lien may not only be asserted, but may be enforced, in the civil action which gave rise to the lien claim, or, in the alternative, in an independent action." 560 P.2d at 836. (Emphasis in original)

The Colorado statute granting a charging lien is without substantive difference from our own with the exception of providing for enforcement "by the proper civil action" and defining with slightly greater specificity the means for filing notice of claim. See C.R.S. § 12-5-119.

*Renfro, supra,* and the other Idaho cases indicate that the purpose of the Idaho attorney's lien statute is to secure payment for legal services rendered. As in *Gee, supra,* were attorneys forced to maintain a separate legal action to assert and recover upon their liens, the function of the statute would be impaired. Both methods of enforcement, the independent action and the petitioning within the original action, are legitimate courses for attorneys to take in seeking satisfaction upon their statutorily granted liens. Speiser, *supra,* at §§ 16.36, 16.39; 7 Am.Jur.2d §§ 345, 347 (1980); *Tisdale v. Wheeler Bros. Grain Co.*, 599 P.2d 1104 (Okl.1979); *Earl v. Las Vegas Auto Parts*, 73 Nev. 58, 307 P.2d 781 (1957).

■ The above statements of the law on this point engender a related area of in-

---

2. The covenants signed by the parties indicated that a total sum of $187,500 was to be paid in settlement of the disputes. The figures entered by the court in the judgment of March 27 are based on this amount, i. e., the attorneys were awarded $5,000 plus 15% of $187,500 ($5,000 plus $28,125) for a total award of $33,125.

(This award was to be satisfied through application of the $8,866.17 held in trust and $25,258.83 from the deposited funds as noted above). This ruling of the court corrects the apparent error in the court's order of March 24, which refers to a base sum of $187,000.

quiry—in what action, and for what services rendered, may the lien be asserted. In the terms provided by the instant case, may the attorneys assert their lien by petition in case no. 20500 after giving notice of the lien in all three matters, and, if so, what recovery is possible. Again Speiser's treatise provides a starting point.

"In the absence of a statute or a special agreement, a charging lien does not extend beyond the charges and fees in the suit in which the judgment was recovered; it does not cover any general balance that may be due the attorney from the client for professional services rendered in other causes or transactions. . . . However, the charging lien has been held to extend to charges for fees or disbursement in suits incident to, or growing out of, the principal object of the employment." *Speiser, supra* § 16.17, p. 384. See also 7A C.J.S. Attorney & Client § 364, p. 724. Thus the court is faced with the determination as to the nature of the employment relationship between the client and the attorney in order to decide for which actions, and in which actions, the assertion and enforcement of the lien is proper.

Mrs. Spencer, as noted, hired Rigby & Thatcher to represent her in a complex and interrelated legal situation. All of the matters concerned the estate of her deceased husband. Though cast in terms of three actions, it is clear that all the planned legal efforts were but different fronts on the same battlefield. The alternative relief prayed for in the probate petition evidences this. The fee agreement entered into between the parties also reflects this interdependence; indeed, that agreement makes the parenthetical observation that the various actions could possibly be resolved in a "package settlement of all claims." Any attorney hired in this situation would necessarily be forced to analyze the facts and legal options as an interrelated whole as determinations made in one area of the complex litigation would certainly affect others. As a matter of good common sense, a person in Mrs. Spencer's position would do exactly as she did here—hire one attorney or firm to handle these factually and legally commingled matters.

Case law supports the recognition of the nature of such interdependent actions and the single assertion of a lien to secure compensation for the services provided therein. A number of older cases directly addressing this point are annotated at 97 A.L.R. 1133, "Attorney's charging lien as including services rendered or disbursements made in other than the instant action or proceeding." (Subsection "b" of that annotation concerns liens for services rendered in matters growing out of or in connection with the case in which judgment is rendered.) Lapse of time has not impaired the logic of these cases. One case there cited, *In Re Abruzzo*, 139 Misc. 559, 249 N.Y.S. 72 (1931), is illustrative.

Attorneys for the beneficiaries of a decedent's trust petitioned in *Abruzzo* for enforcement of a charging lien in an estate accounting proceeding. The court held that the attorneys were entitled to assert a lien coextensive with the services they had performed in all estate-related proceedings leading up to the accounting since, even though theoretically separate, the actions were in reality an integrated whole. To hold otherwise, the court said, and deny the interrelationship and the ability of the attorneys to assert and enforce the lien, would be absurd for no recovery on the part of the beneficiaries could be possible in the accounting proceeding without the earlier representation. Other more recent cases have similarly refused to elevate the "form" of separate actions over the "substance" of essentially unitary legal representation. See, e. g., *U.S. v. Preston*, 232 F.2d 77 (9th Cir. 1956), *cert. den.* 352 U.S. 871, 77 S.Ct. 97, 1 L.Ed.2d 77; *Spinello v. Spinello*, 70 Misc.2d 521, 334 N.Y.S.2d 70 (1972); *Butler v. Breckinridge*, 442 P.2d 313 (Okl.1967). See generally, Speiser, *supra*, § 16.17; 7 Am.Jur.2d § 328 (1980).

■ In light of this authority and the facts before the court here, including the agreed upon unitary representation evidenced by the fee agreement, the fact that there are arguably three "separate" actions

is not determinative. A petition in any of the three causes after proper notice having been given would have been sufficient to raise the question of enforcement of the attorney's lien for services performed for Mrs. Spencer. As explained below, however, a petition in no. 20500, situs of the funds here involved, was the most reasonable.[3]

■ The law is well settled that an attorney in asserting a charging lien is entitled to recover against sums which his efforts have brought forth. Variously phrased, the intent of the law on this point is to allow the attorney an interest in the fruits of his skill and labors. The lien secures his right to compensation for obtaining the recovery or "fund" for his client. Of course, where the attorney's efforts are sterile, there would be nothing against which the lien right could be asserted, but where he has produced a fund, he has an equitable interest therein recognized by the lien statute and relevant case law.

The Idaho Code speaks of the lien attaching to "a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whosoever hands they may come." I.C. § 3–205. Further, this interest cannot be defeated or affected "by any settlement between the parties before or after judgment." *Id.*. The monies paid into court in case no. 20500 were the product of the settlement brought forth by the efforts of Rigby & Thatcher. Previous Idaho law has recognized, consonant with the statutory language, the right of attorneys to seek a lien recovery against the settlement "proceeds . . . in whosoever hands they . . . come." *Miller v. Monroe*, 50 Idaho 726, 300 P. 362 (1931); *Hansborough v. D. W. Stanrod & Co.*, 43 Idaho 119, 249 P. 897 (1926).

In *Hansborough*, the attorney handled two separate foreclosure proceedings against a debtor for a bank. Each action was settled, the bank receiving stock among other things for their interest. Before the client bank credited the account of the attorney (the agreed upon method of payment for the legal services), the bank failed and was taken over by the Commissioner of Finance. The attorney at that point filed a petition with the Commissioner noting his lien claim as to the settlement proceeds and seeking enforcement thereof. On appeal the Supreme Court held that the attorney's charging lien as asserted attached to the stock obtained by the bank in the settlement of the earlier foreclosure actions, this being the "proceeds" mentioned by the statute which the attorney's services produced. The fact that the attorney had properly petitioned the Commissioner for relief, and that the stock was in the control of the Commissioner, led the court to conclude that this was a proper site for enforcement of the lien. In comparison, the proceeds of the settlement in the instant case are within the control of the court which has been properly petitioned for enforcement of the charging lien.

■ The court in *Almi, Inc. v. Dick Corp.*, 31 Pa.Cmwlth. 26, 375 A.2d 1343 (1977), was faced with a complex factual situation which resulted, as here, with a sum representing an earlier unpaid settlement amount being deposited with the court pending resolution of legal issues. One claimant to the sum was an attorney for one of the parties who was asserting a charging lien for services performed in the action rendering the settlement. The attorney had represented his client under a contingency agreement providing for a percentage of the sums recovered. The court stated:

> "[w]hen . . . a fund is deposited in court for judicial distribution, the court makes the distribution based on equitable principles and may recognize the attorney's

---

**3.** Our determination that the petitioning herein was a proper method of raising and seeking to enforce the attorneys' lien regarding these claims disposes of appellant's venue objection. (Appellant asserted that venue was proper only in Twin Falls County, the county of her residence. I.C. § 5–404). Venue in the Seventh District Court in Bonneville County would be improper only if an independent action was required as to all or part of the claims here asserted by the attorneys. Such is not the case.

charging lien. . . . In *Recht v. Clairton Urban Redevelopment Authority*, 402 Pa. 599, 608, 168 A.2d 134, 138–39 (1961), the Pennsylvania Supreme Court, after an extensive review of the case law, determined the requisites of an attorney's charging lien to be:

'(1) [T]hat there is a fund in court or otherwise available for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.'

Here, there is a fund in court created by the efforts of [the attorney] on behalf of [his client]. There is also a contingent fee agreement under which counsel might look to the fund for compensation." 375 A.2d at 1350.

Though this court has never specified the requisites for enforcement of a charging lien in such a manner, the similarity of the situation makes the *Almi* case persuasive, and certainly Rigby & Thatcher could meet the requirements there set forth.[4]

■ The concept that an attorney is entitled to assert his lien against the fund which he helped bring into existence has often been recognized. See, e. g., *Ryder v. MacKenzie*, 235 So.2d 36 (Fla.App. 1970); *In re Estate of Wheeler*, 71 Wash.2d 789, 431 P.2d 608 (1967); *Owen v. Forchelli*, 42 Misc.2d 1064, 249 N.Y.S.2d 913 (1964). See generally, Speiser, Ch. 11; 7 Am.Jur.2d §§ 339, 343 (1980). Rigby & Thatcher are entitled to determination and enforcement of their lien against such a fund here.

■ The appellant raises another objection to the procedure followed below; that she was denied a right to a jury trial. The assertion and enforcement of attorney's liens is an equitable exercise. This court recognized the equitable nature of the lien in *Nancy Lee Mines, Inc. v. Harrison*, 93 Idaho 652, 654–5 (n. 4), 471 P.2d 39, 41–2 (1970). See also, 7 Am.Jur.2d § 346 (1980). As such an equitable procedure, it is generally held that these causes are triable to the court. Speiser, *supra*, at § 16.36, p. 400 ("[t]here is no right to a jury trial in the proceeding."). In response to the same demand for a jury, the Missouri appellate court stated in *Fein v. Schwartz*, 404 S.W.2d 210 (Mo.App. 1966):

"The attorney's lien, whether under the statute or at common law, is equitable in its nature. Even decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right, or privilege . . . . But where the thing is not in possession [i. e., is not a retaining lien], and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity. . . . There is no question but that a proceeding such as this one is an equitable one, in that it is triable before a court of equity. . . .

The instant suit is one in equity in which a trial by jury did not exist at common law and never has as a matter of right in this state." 404 S.W.2d at 228.

While the court agrees with the argument that the procedure may not be "summary" (see, e. g., *Crawford v. Crane*, 204 Or. 60, 282 P.2d 348 (1955); *Lee v. Lee*, 5 Or.App. 74, 482 P.2d 745 (1971) concerning Oregon statutes which allowed such a summary procedure for retaining liens but which were silent as to charging liens), we are unable to agree that a full and fair

---

4. The appellant makes the argument that the attorney's lien could not be enforced against sums not "recovered," i. e., not actually received by Mrs. Spencer. However, as *Hansborough*, *Almi*, and other relevant authority makes clear, it is the availability of such a fund for distribution by judicial order that is determinative. As noted previously, the lien here attached to the monies paid into court in no. 20500 pursuant to the settlement. These sums clearly come within the quoted language of I.C. § 3-205.

hearing before a court of competent jurisdiction must be supplemented with a jury before a determination concerning an attorney's lien would be valid. A review of the record indicates that such a hearing (albeit over the appellant's objection) was had here.

■ Other contentions of the appellant not previously addressed question the factual rulings of the trial court regarding the fees awarded. In light of the discussion above, the court was justified in making these determinations. A review of the record supports the findings and conclusions of the district court since those decisions were based on competent though at times conflicting evidence and are not clearly erroneous. Therefore we will not disturb those determinations. *Higginson v. Westergard*, 100 Idaho 687, 689, 604 P.2d 51, 53 (1979); *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 578, 513 P.2d 627, 630 (1973).

The decision of the district court, embodied in the order of March 24, 1978, and the judgment of March 27 of that year, is affirmed.

Costs to respondent. No attorney fees allowed.

BAKES, C. J., and DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

I cannot agree with the majority that the three separate claims of Rigby & Thatcher can properly be brought and pursued to judgment in this single particular enforcement of lien proceeding. To help clarify these rather involved proceedings, I will briefly explain the nature of the three separate claims as they appear to me:

1. *Removal of executor* (Civil No. 4193, Bonneville County, Magistrate Division). As to the removal of the executor and ratification of the children's disclaimers, Rigby & Thatcher had, prior to the exchange of letters re fees with Spencer, filed a petition in the probate proceeding seeking the bank's removal as executor and seeking ratification of the disclaimers. The petition included a prayer for alternative relief, to-

wit, that the bank be compelled to bring a shareholder's suit against the Commission Co. These matters were unresolved when the present litigation, seeking enforcement of the attorney's claim of lien, was heard and determined.

2. *Pending suit against the bank and the two Skeltons* (Civil No. 13674, Seventh Judicial District; Supreme Court No. 9899). Spencer initiated this action in 1964 against the bank and the two Skeltons, alleging that her husband's partnership interest in the Idaho Livestock Auction Co. had been sold for an under-value figure. She sought either rescission or damages. This Court had reversed the dismissal and remanded. *Spencer v. Spencer*, 91 Idaho 880, 434 P.2d 98 (1967). Trial was set for May 1, 1973, but a settlement was reached without going to trial.

3. *Potential suit against Commission Co.* Mrs. Spencer wanted to obtain some return from her ownership of stock in the Idaho Livestock Commission Co., an Idaho corporation, and apparently agreed that Rigby & Thatcher would try to compel the bank to bring a shareholder's action for rents and dividends. However, no suit was ever brought against the Commission Co., other than the petition in the probate proceeding to alternatively compel the bank to bring a shareholder's action. No mention was ever made of any separate suit to compel the Commission Co. to buy the stock held by Mrs. Spencer.

As noted by the majority, the settlement that was achieved before trial in Civil No. 13674 resolved both that action and also the Commission Co. dispute, except that Spencer reserved all her claims against the bank. With regard to the majority's discussion of the terms of those agreements, however, I would emphasize that the $150,000 the Commission Co. agreed to pay Mrs. Spencer was both for her stock and for the covenant not to sue, and that no allocation was made between the two. As stated in the agreement:

"WHEREAS, the parties of this agreement recognize and agree that a stockholders suit for the pursuit of any other

claim against Second Party, its stockholders, officers, agents, servants or employees would be expensive, time consuming and would dissipate assets of the said estate and that it is in the best interest of all concerned that Second Party or its nominee acquire said 127½ shares of the capital stock of Second Party, and that First Party be paid for said stock as hereinafter provided for.

"NOW, THEREFORE, it is agreed by and between First Party and Second Party as follows:

"For and in consideration of the premises, and of the payment by Second Party to First Party of the sum of Twenty-Five Thousand Dollars ($25,000.00), receipt of which is hereby acknowledged, First Party does hereby sell, assign, and transfer to Second Party said 127½ shares of the capital stock of Second Party, free of all liens and encumbrances, and does further covenant and agree that First Party shall not sue or bring action against Second Party or against the following additional parties . . . concerning the subject of this agreement or any other claim now existing, except for breach by Second Party of this agreement or of a separate agreement of this date executed by First Party and Floyd E. Skelton."

The agreement provided for the payment of an additional $125,000 once Spencer had delivered the stock and provided other specified assurances that the agreement was valid and binding. Thus this agreement was both a sales agreement and a covenant not to sue.

With this background, the proper place to begin an analysis of this case is with an examination of the authority for an attorney's charging lien. It is a creature of statute. I.C. § 3–205 provides:

"The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. *From the commencement of an action, or* the service of an answer containing a *counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim,* which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment." (Emphasis added.)

By the explicit language of the statute such a lien is limited to those claims placed in litigation. Furthermore, nothing in the statute provides for recovering for services rendered in any other cause or transaction, even though such cause or transaction occurs at the same time as the litigated claim, or is related to the litigated claim. The lien does not extend to the client's assets, generally, and a "cause of action," other than the one to which the attorney's lien may be said to attach directly, is simply another asset.

Nonetheless, the majority, without even discussing the literal terms of this statute, attempts to justify its holding by resorting to various cases from other jurisdictions. The majority uses *In Re Abruzzo's Estate,* 139 Misc. 559, 249 N.Y.S. 72 (1931), as illustrative of their position. The relevant question in that case was whether the attorneys were to be limited in their recovery to the value of the services rendered in connection with the accounting proceeding alone, or whether the lien would also attach to other services in connection with the estate that led to the accounting proceeding. The attorneys in that case had participated in the probate of the will, taken part in two aborted construction proceedings and a successful construction proceeding, and finally in the compulsory accounting which terminated the lawsuit. Each of those steps necessarily followed from the other, and, as stated by that court, a holding denying compensation for all these services "would be little short of an absurdity, since it might result in permitting a recovery for services performed in connection with the accounting proceeding, while denying it in the far more difficult proceeding for a construction of the will which, if not successfully prosecuted, would have precluded the possibility of any recovery by the client on the accounting." *Id.* at 78. The attorneys

in that case were faced with a will that their clients challenged; each action they took was in the vertical progression of steps necessary to challenge that will, and in reality all these steps were simply one overall proceeding.

That is not the situation in the present case, however. First, here we have an award of $5,450, supposedly as earned fee in the probate proceeding, which service was totally unrelated to the litigation in the present case. That suit involved an attempt to remove the bank as executor, and to ratify the disclaimers of the heirs. Neither settlement agreement mentioned or was in any way connected with this endeavor. In fact, both agreements specifically reserved any action Mrs. Skelton might wish to pursue against the bank. Nor was this endeavor part of the contingent fee agreement. Nor was this issue in any way necessary to a culmination or settlement of these other two possible suits, as shown by the fact that this matter was still unresolved when this appeal was brought.

The purpose of a charging lien in favor of an attorney is expressed in Speiser as follows:

> "It is founded on the equity of an attorney to be paid his fees and disbursements out of the judgment he has obtained. It was created to protect the rights of an attorney unable to get possession against a client who seeks to avoid payment for services." 2 Speiser on Attorneys Fees § 16.14 at 381 (1973) (footnotes omitted).

"[T]he agent responsible for the creation of an asset . . . should have security for payment of his fees out of the very monies which would not exist but for his services. It is regarded as an equitable assignment to the attorney of the funds produced by his efforts." *Spinello v. Spinello*, 70 Misc.2d 521, 334 N.Y.S.2d 70, 76 (S.Ct.1972). Rigby & Thatcher here have no claim to a lien for the probate matter, for the sum recovered bears no relationship to the matter. To extend the lien to this extent is to pervert the very purpose of the lien, *i. e.*, to protect an attorney's fee in a recovered fund.

It must be remembered that the provision for a lien is a special provision where the attorney has recovered a fund for his client. In other cases the attorney is not left without a remedy, but must pursue his claim as any other aggrieved creditor. Secondly, the purported total settlement of all claims, from which the trial court awarded Rigby & Thatcher a percentage fee, included both a sum paid for the *value of the stock owned by Spencer* and the value of her covenant not to sue. I cannot read into I.C. § 3–205 any provision that a lien attaches to the proceeds of a sale of a client's property. Such a sale is not a "cause of action or counterclaim" within the language of the statute. It would be unreasonable to hold that under this statute an attorney who handles the sale of a client's real estate would have a lien attaching to his fee for selling that real estate, yet the majority upholds the giving of a lien to Rigby & Thatcher on the sale of Spencer's stock. Since no allocation was made in the agreement between the value of the stock and the covenant not to sue, it is not proper to validate the whole or any part of that sum in this lien enforcement proceeding.

Aside from *Abruzzo*, annotations and texts, the majority cites three additional cases to support its holding. None of those cases, however, bear a resemblance to this case. In *United States v. Preston*, 232 F.2d 77 (9th Cir. 1956), the attorney, at the request of his client, advanced $468.19 as expenses in one suit, the *Eleuteria* case. The district court ordered this sum paid from monies deposited in the court's registry from the allotment proceeding, a technically different suit. The court on appeal presumed that the *Eleuteria* case was in reality a part of the allotment proceeding, that the expenditure in that case was necessary and proper to fully effectuate the judgment of allotment. On this basis the court held that the district court was within its equitable powers to order the $468.19 paid out of the trust funds obtained from the allotment proceeding. Obviously this presumption, that all of the actions taken by the attorneys were necessary and proper to effectuate a final judgment in the principal suit, does not hold in the present case.

In *Spinello v. Spinello*, 70 Misc.2d 521, 334 N.Y.S.2d 70 (S.Ct.1972), the second case cited by the majority, the court held that the lien attached to "the preliminary legal work necessarily entailed in the bringing of" the proceeding. *Id.* at 78. Again, this work could best be described as the "vertical" steps necessary to bring an action, while in the present case there are separate "horizontal" proceedings.

As to the next cited case, *Butler v. Breckinridge*, 442 P.2d 313 (Okl.1967), as I read it that case does not even address the question of applying a lien to more than one suit.

Without belaboring the point by a further detailed summary, each of the cases cited in the annotations and texts is also clearly distinguishable from the present case. To illustrate, the quote from Speiser utilized by the majority cites three cases in addition to *Abruzzo*. *Williams v. Kauderer*, 5 Misc.2d 152, 165 N.Y.S.2d 560 (City Ct. 1957), did not involve fees for two actions, it stated only that in addition to the lien attaching to the proceeds of the judgment, it also attached to proceeds obtained by bringing a proceeding under a statute authorizing an order permitting the debtor to pay the sheriff or judgment debtor. *In Re Paschal*, 10 Wall. (U.S.) 483, 19 L.Ed. 992 (1871), dealt with a retaining lien, a lien attaching to monies already in the attorney's hands, not a charging lien. *Newbert v. Cunningham*, 50 Me. 231 (1863), held only that the attorney's lien extended to suits incidental to enforcing the judgment, that he could enforce his lien by bringing an action against the sheriff for not taking a sufficient replevin bond.

In summary, the courts have held that an attorney's charging lien extends to services he performs that are necessary or incidental to the culmination of the suit which generates the fund, even if those services are not technically part of the principal suit. In so doing the courts have properly refused to elevate form over substance, but in none of those cases have the courts distorted the form and meaning of an attorney's charging lien to the point that it is unrecognizable.

Today's opinion, however, comes close to so doing. I cannot see how these three separate actions—one a probate proceeding, one a suit for rescission or damages, and one not a suit at all, but a sale of stock—can be said to be "suits incident to, or growing out of, the principal object of the employment," as claimed by the majority of this Court. All three of these matters were not necessary to resolve the actual suit that was brought, and to which the lien, by stretching, may be said to attach. Indeed, this case more properly falls within the generally established rule that an attorney's charging lien extends only to fees and disbursements rendered in the particular action in which they were incurred, and does not cover a general balance due the attorney, or charges rendered in other causes. *See, e. g., Regan v. Marco M. Frisone, Inc.*, 54 A.D.2d 1125, 388 N.Y.S.2d 798 (1976); *Collins v. Thuringer*, 92 Colo. 433, 21 P.2d 709 (1933); S. Speiser, Attorneys' Fees § 16.17 (1973); 7 Am.Jur.2d *Attorneys at Law* § 285 (1963); Anno, 97 A.L.R. 1133 (1935).

Rigby & Thatcher have thus in effect sought in this ancillary lien foreclosure proceeding to enforce all of their various claims for attorneys' fees claimed against Spencer, even though in reality there are three separate claims.

At best, and as Spencer seems willing to concede, the lien might apply to the $37,500 collected in settlement of No. 13674 (and to whatever portion of the Commission Co. settlement was for the covenant not to sue rather than in payment for the stock). Thus I cannot see this as a claim brought solely in the original action to enforce a lien on that cause of action. Although summarily disposed of by the majority, I believe that the venue issue should control our disposition of this case.

Although I.R.C.P. 12(b)(3) as it first appeared in 1959 in connection with approved form No. 15 may have been thought to provide for dismissal for improper venue, the rule now reads that a motion challenging improper venue shall be considered as a motion for proper venue: "(3) improper

venue, which motion shall state the grounds therefore and be considered as a motion for proper venue, but need not be accompanied by an affidavit ...." I.R.C.P. 12(b)(3).

I.R.C.P. 40(e) provides:

"The judge or magistrate may grant a change of venue or change the place of trial to another county in any civil action as provided by statute, and the judge or magistrate *must*, on motion pursuant to Rule 12(b), *change the venue* of a trial *when* it appears by affidavit or other satisfactory proof:

"a. That *the county designated in the complaint is not the proper county* ...." (Emphasis added.)

Since this is not an action solely to enforce a lien, this action "must be tried in the county in which the defendants, or some of them, reside, at the commencement of the action ...." I.C. § 5–404. Since Spencer's allegations that her residence was Twin Falls County are unopposed by Rigby & Thatcher, they must be accepted as true.

Under a similar statutory provision,[1] the Supreme Court of Montana held as follows:

"Where a defendant, in pursuance of the statute, moves for a change of place of trial upon a ground which entitles him to the change demanded as a matter of right, the court has no option but to grant the motion; its discretion is not invoked. Furthermore, when the movant's papers present such a showing, the court has no right to pass upon any other question in the case. A defendant entitled to have his motion granted has the right to have all other judicial action in the cause determined in the district court of the proper county." *Johnson v. Clark*, 131 Mont. 454, 311 P.2d 772, 776 (1957) (quoting *State v. District Court*, 74 Mont. 338, 240 P. 388, 390 (1925)).

In *Brockman v. Brockman*, 253 S.C. 528, 171 S.E.2d 862, 862 (1970), the court noted:

"We have held that where a motion is made for a change of venue on the ground that the named county is the residence of the defendant, and such is not disputed, then a question of law is presented and the decision in the matter is not addressed to the discretion of the trial judge."

In *Brockman*, the action had been brought in Union County. The appellant, in support of his motion for a change of venue, filed an affidavit averring that he was a resident of Spartenburg County. Respondent made no showing disputing appellant's affidavit. The court therefore held that appellant was entitled to trial in Spartenburg County as a matter of law, and ordered that the venue be changed. For other examples of cases holding that a transfer in situations such as this are mandatory, see *State v. Sorrell*, 18 Ariz.App. 558, 504 P.2d 499 (1973); *Culligan Soft Water Service v. Berglund*, 259 Iowa 660, 145 N.W.2d 604 (1966); *American State Bank of Dickinson v. Hoffelt*, 236 N.W.2d 895 (N.D.1975); *Schroeder v. Schroeder*, 74 Wash.2d 853, 447 P.2d 604 (1968); *Andrews v. Cusin*, 65 Wash.2d 205, 396 P.2d 155 (1964).

Moreover, if the defendant is entitled to a change of venue on any of the causes of action alleged in the complaint, then a motion for a change of venue must be granted as to all. *Archer v. Superior Court*, 202 Cal.App.2d 417, 21 Cal.Rptr. 48, 49 (1962). *See Regents of the University of California v. Superior Court*, 3 Cal.3d 529, 91 Cal.Rptr. 57, 476 P.2d 457, 460 n.8 (1970). As noted in *Ah Fong v. Sternes*, 21 P. 381, 382 (Cal. 1889):

"Even if the complaint be regarded as stating two separate causes of action, upon one of which the defendant would be entitled to a change of venue, but not upon the other, the result would be the same. It is the plaintiff's own doing that the complaint be so drawn. He cannot deprive the defendant of his right to a change of venue by the addition of something to the complaint. If this were not

---

1. Mont.Code Ann. § 25–2–201 provides that "[t]he court or judge must, on motion, change the place of trial in the following cases:

(1) when the county designated in the complaint is not the proper county."

the rule, it would be very easy for a plaintiff to defeat the defendant's right in the matter. All that plaintiff would have to do would be to add another cause of action to his complaint. It need not be a genuine cause of action, and it would not matter whether the two causes of action were properly united or not."

The terms of I.R.C.P. 40(e) governing a change of venue are mandatory. Once an unrebutted showing is made that the defendant resides in a different county, the court must grant a request for a change of venue. Where Rigby & Thatcher have chosen to unite and pursue all of their claims in this particular action, and since the proper venue for some, if not all, of those claims is Twin Falls County, the trial court was bound to grant Spencer's request for a change of venue. I would therefore reverse the judgment and remand with directions that the trial court order a change of venue to Twin Falls County.

In conclusion, I submit that my lack of participation in any of the previous cases which arose after the death of Mr. Spencer and which reached this Court on appeal may allow me to view the issues here in a more detached manner than is so with the other members of the Court. A narrow construction of I.C. § 3-205 would preclude Rigby & Thatcher from any claim of lien—for the simple reason that they were never attorneys appearing in the action which generated the fund against which they assert liens for their various claims. However, other than for Mrs. Spencer's refusal to accept the money—which led to the suit generating the fund—their lien could and would have attached. I do not think it stretches the language and purpose of I.C. § 3-205 to allow the lien as against those funds directly attributable to the preceding action, which action led to the settlement, and would have led to their being paid if they had not been discharged. Very likely the previous suit which led to the settlement could have been reopened on Mrs. Spencer's reneging and refusing to accept the agreed amount.

What I do apprehend is that the overly broad construction given to I.C. § 3-205 by the Court today may lead to the total loss of the remedial provisions of that statute. It is subject to being classified as special legislation which gives an attorney creditor vastly superior rights to those of a general non-attorney creditor—in particular depriving the alleged debtor of any right to a jury trial.

On the other hand, where the claim of lien is overly broad as against the fund in question, a change of venue and a jury trial would place the statute safely away from critical scrutiny.